**HIGHLAND PARK STATE BANK, Appellant,**

v.

**Abel J. SALAZAR, Appellee.**

No. 15691.

Court of Civil Appeals of Texas, San Antonio.

June 29, 1977.

Rehearing Denied Sept. 7, 1977.

George F. Manning, San Antonio, for appellant.

Josephine M. Hall, Hardberger, Branton & Herrera, Inc., San Antonio, for appellee.

CADENA, Justice.

Highland Park State Bank of San Antonio, defendant below, appeals from a judgment awarding plaintiff, Abel J. Salazar, $2,222.05.

The question presented is whether money in a savings account, consisting of benefits paid to the depositor under the Workmen's Compensation Act, can be pledged to secure repayment of money lent to the injured employee after his receipt of such benefits.

Plaintiff, after being paid the sum of $4,556.10 as compensation for injuries suffered by him during the course of his employment, deposited $3,556.10 of such funds on October 26, 1972, in a savings account at defendant bank. The account was opened as a joint tenancy account in the names of plaintiff and his son, with right of survivorship, with either plaintiff or his son having the right to withdraw part or all of the funds at any time. Defendant had no knowledge of the fact that the money deposited represented benefits paid to plaintiff under the Workmen's Compensation Act.

On December 26, 1972, plaintiff and his son executed a promissory note payable to defendant in the amount of $4,646.16. The amount of the note represented money advanced by defendant, plus prepaid interest and prepaid insurance premiums. To secure payment of the loan, defendant obtained a security interest in the savings account in the form of a security agreement signed by plaintiff and his son. In addition, plaintiff's son executed a pledge agreement covering the amount in the savings account. The money advanced by defendant was used by plaintiff to purchase a truck to be used in plaintiff's business.

The only payment made by plaintiff or his son on the debt evidenced by the note was made on March 19, 1973. When no further payments were forthcoming defendant, on June 7, 1973, exercised its right to declare the entire indebtedness due. At that time the amount owing on the note, after giving the debtors credit for prepaid but unearned interest and for unearned prepaid insurance premiums, was $3,561.99. Defendant applied the then balance ($1,834.87) in the savings account to such indebtedness. No claim for the deficiency of $1,727.12 has been made by defendant against either plaintiff or his son.

On April 14, 1975, plaintiff filed this suit alleging that the pledge of the savings

account as security for the loan was invalid as an attempted assignment of benefits payable under the Workmen's Compensation Act and that, therefore, defendant's appropriation of the funds in such account to payment of the note was wrongful. Plaintiff also sought recovery of attorney's fees. Defendant's answer consisted of a general denial.

Plaintiff then filed a motion for summary judgment insofar as his prayer for recovery of $2,222.05 was concerned and requesting that the question of attorney's fees be reserved for determination at a subsequent hearing. Defendant also filed a motion for summary judgment. Attached to defendant's motion was an "agreed statement of facts" signed by attorneys for both parties.

The judgment in this case, dated May 18, 1976, is captioned "final judgment" and recites that a hearing was held on February 27, 1976 on plaintiff's motion "for Partial Summary Judgment" and defendant's motion for summary judgment. The order further recites that the court, after considering the motions, briefs, pleadings and stipulations on file, "finds that as a matter of law, the Workmen's Compensation Benefits of the Plaintiff, . . ., retain their identity as such by virtue of having been placed in a separate account without commingling with funds from other sources," and that, as a matter of law, "the subsequent attempted assignment or pledge" to defendant was "void as provided by the terms of Article 8306, Section 3", Tex.Rev. Civ.Stat.Ann. (1966).

The order then recites that plaintiff's motion for "partial" summary judgment is granted and defendant's motion for summary judgment is overruled. This is followed by a paragraph setting out that the trial court is of the opinion that plaintiff's claim for attorney's fees and "any and all other relief requested" by plaintiff "is denied." The final paragraph granted plaintiff judgment against defendant for $2,222.05 and costs and directs issuance of execution if such sum be not timely paid.

It is clear that the order disposes of all issues in the case and, despite the reference to the fact that plaintiff's motion for "partial" summary judgment is granted while defendant's motion for summary judgment is denied, the order is a final appealable judgment.

The pertinent portion of Art. 8306, § 3, is as follows:

All compensation allowed under the [Workmen's Compensation Act] shall be exempt from garnishment, attachment, judgment and all other suits or claims, and no such right of action and no such compensation and no part thereof or of either shall be assignable, except as otherwise herein provided, and any attempt to assign the same shall be void.

The statute may be considered as containing three separate provisions. The first clause protects the injured employee against involuntary loss of the compensation as a result of *in invitum* proceedings such as garnishment. The second clause prohibits total or partial assignment of the *right of action* and also proscribes total or partial assignment of the *compensation*. As distinguished from the first clause, the second clause concerns itself with situations where the injured employee voluntarily creates, or attempts to create, an interest in a third party in his claim for compensation or in the compensation itself.

The first clause, which shields the injured employee against the coercive, remedial and executorial processes available to creditors, has been liberally interpreted to afford him the utmost protection. For example, although the statutory exemption of "current" wages from garnishment embodied in Art. 3832, § 16, Tex.Rev.Civ.Stat.Ann. (1966) was held in *Bell v. Indian Live-Stock Co.*, 11 S.W. 344 (Tex.1889) and *Bradshaw v. Smith*, 130 Tex. 180, 108 S.W.2d 200 (1937), to terminate once the wages were collected by the employee and deposited in a bank, the exemption of compensation benefits continues even after the compensation has been paid to the injured employee and has been deposited in a bank, at least in the case where the compensation money has not been commingled with any other funds.

*Gaddy v. First Nat. Bank of Beaumont,* 115 Tex. 393, 283 S.W. 472 (1926). It is not entirely clear from the opinion in *Gaddy* whether the debt which the garnisher was attempting to collect was incurred before or after the employee received the compensation, although at least one analysis of the opinion suggests that the exemption would not be applicable if the debt were incurred for living expenses after receipt of the compensation. Note: 4 Texas L.Rev. 538 (1926).

▮ The provision to the effect that the "compensation" shall not be "assignable" is somewhat unusual, since normally we do not speak of an "assignment" of money. An assignment is the act by which one transfers to another, or causes to vest in another, his right of property. *Harlowe v. Hudgins,* 84 Tex. 107, 19 S.W. 364, 365 (1892); 6 Am.Jur.2d, *Assignments,* § 1, p. 185 (1963). Therefore, taken literally, the proscription against assignment of the compensation would disable an injured employee, after receipt of the compensation, from using the money for the purpose of maintaining himself and his dependents. He could not use the money to pay rent, purchase food, make payments on his home or automobile, pay for medical attention for himself and his dependents, etc., since payment of the purchase price would necessarily involve a transfer of his "title" to the money to the purchaser. In effect, the prohibition against assignment of the compensation would make the money received by the employee completely useless for any purpose and would completely frustrate the purpose of the Workmen's Compensation Act, which is to provide for the maintenance of the injured worker and his dependents during his disability, whether such disability be temporary or permanent, total or partial.

Unless we are prepared to hold that the legislature did an unbelievably foolish thing, it is clear that we cannot give to the prohibition against assignment of the compensation its ordinary meaning, although no difficulty is created by giving to such language its ordinary meaning insofar as it prohibits assignment of the "right of action."

▮ The "exemption" provision with which we are here concerned can be reasonably interpreted in a manner which will not completely frustrate the legislative purpose of helping the injured employee and, at the same time protect the compensation from claims of creditors and protect the employee from the consequences of some of his "voluntary" actions which were undertaken under economic duress. This interpretation, which we adopt, may be stated as follows:

1. The compensation received by the injured employee is completely immunized, at least as long as it remains identifiable as "compensation," from all claims of creditors where the claim is based solely on the fact that the employee is indebted to the creditor. This result is achieved by the first clause which protects the employee against the coercive, remedial and executorial processes available to creditors, such as garnishment.

2. The employee is protected against his "voluntary" attempts to divest himself of, and to vest in another his right of action, that is, his claim to the compensation. This is accomplished by nullifying attempted assignments of the "right of action."

3. The legislature has insured that, after the employee has successfully asserted his right to compensation, he will receive the money free of all claims of others to any part of the money which are based on agreements of the employee made prior to the actual receipt of the funds. This is accomplished by the provision declaring void assignments of the "compensation." This latter provision we are obviously construing as prohibiting only assignments of the compensation made prior to the time that the employee receives the money.

This interpretation accomplishes the legislative purpose of assuring that, at the time the employee receives the compensation, the money will be available, intact, to him for use for the purpose for which it is intended—the support of himself and his

dependents during the period of his disability. He may, of course, use the money for whatever purpose he deems advisable, but he can be divested of his right to the money only as the result of his voluntary acts after he has received it. He may use it to provide food, shelter and other necessities of life for himself and his family. He may use it to buy a truck, or he may use it as collateral to secure repayment of a loan made for the purpose of buying a truck.

Under this interpretation, the pledge by plaintiff of the compensation money, made after he received the funds, to secure repayment of his debt to the bank was not void under the provisions of the statute on which plaintiff relies.

Even if, contrary to good sense, we give to the statutory language its literal meaning, plaintiff cannot succeed in his effort to avoid the consequences of his pledge of the savings account.

It is almost universally recognized that there is a distinction between an assignment and the creation of a mere lien. The creation of a lien is not an assignment, the two being distinguished by the fact that a lien is merely a charge on property while an assignment creates an interest in property. In *Vaughan v. John Hancock Mut. Life Ins. Co.*, 61 S.W.2d 189, 190 (Tex.Civ.App.—Fort Worth 1933, writ ref'd), the Court said: "We cannot agree that any such definition can be given the word 'lien' as makes it mean 'sale,' 'transfer,' 'delivery,' 'assignment,' or 'bill of sale,' or the like." See also 6A C.J.S. *Assignments* § 5b pp. 595–96 (1975) and 4A Words and Phrases, *Assignment*, pp. 129–32 (1969).

The pledge of the savings account, therefore, was not an assignment of the compensation.

In view of our conclusions concerning the applicability of the statute in question to the facts of this case, no useful purpose would be served in discussing defendant's complaints relating to the failure of the trial court to file additional findings of fact and conclusions of law.

The judgment below is clearly erroneous and must be reversed. If we consider the judgment as one granting plaintiff's motion for summary judgment and denying defendant's motion for summary judgment, we can sustain defendant's point that the trial court erred not only in rendering summary judgment in favor of plaintiff but also in refusing to grant defendant's motion for summary judgment. Since plaintiff moved only for "partial" summary judgment, it can be argued that granting summary judgment here in favor of defendant would be improper. However, in view of the fact that the judgment appealed from disposed of all issues in the case and the record contains an agreed statement of facts, no useful purpose would be served by remanding the case to the trial court for a new trial. Plaintiff does not suggest that there are additional facts to be developed. Whether we view the judgment as one granting summary judgment in favor of plaintiff on the whole case, or as granting a "partial" summary judgment in favor of plaintiff and disposing of the remainder of the issues on the basis of the agreed statement of facts, the record conclusively establishes that defendant is entitled to judgment.

The judgment of the trial court is reversed and judgment is here rendered that plaintiff take nothing.