Rebecca L. COFFEY, Angela Douglas, Donna M. Kisor a/k/a Donna M. Wallace a/k/a Ladonna M. Wallace, and Elizabeth Wallace, Appellants,

v.

SINGER ASSET FINANCE COMPANY, L.L.C., Settlement Capital Corporation, and Merrick Bank Corporation, Appellees.

No. 05–05–01240–CV.

Court of Appeals of Texas, Dallas.

Jan. 31, 2007.

Keith R. Verges, Figari, Davenport & Graves, Dallas, for Appellants.

Jeffrey M. Tillotson, John Volney, Lynn, Tillotson & Pinker, L.L.P., Robert B. Weathersby, Matthew T. Bracy, Timothy E. Taylor, Suzanne B. Campbell, Andrews Kurth LLP, Dallas, for appellees.

Before Justices MORRIS, LANG, and LANG–MIERS.

## OPINION

Opinion By Justice LANG–MIERS.

Appellants Rebecca Coffey, Angela Douglas, Donna Kisor, and Elizabeth Wallace appeal summary judgments that dismissed their claims against Appellees Singer Asset Finance Company, Settlement Capital Corporation, and Merrick Bank Corporation.

### BACKGROUND FACTS

Several years ago, each of the appellants filed and settled lawsuits for personal injuries. Coffey settled in 1989, Wallace/Kisor [1] settled in 1994, and Douglas settled in 1998. Each of the settlement agreements provided that the respective plaintiff would receive structured settlement payments, or periodic payments over a specified period of time. In each case, the settling insurance company purchased an annuity to fund the settlement payments.

Appellees Settlement Capital and Merrick Bank are factoring companies: they pay immediate cash for the right to future payments under structured settlements. *See Johnson v. Structured Asset Servs., LLC,* 148 S.W.3d 711, 728–29 (Tex.App.-Dallas 2004, no pet.). In 1999, Douglas approached Settlement Capital for a loan. That same year, Coffey, Wallace, and Kisor, who had just turned eighteen, approached Merrick Bank [2] for loans. In

---

1. Elizabeth Wallace filed individually and on behalf of her minor daughter, Donna Kisor.

The terms of the settlement stated each would receive periodic payments.

2. Merrick conveyed its rights in the loan doc-

each instance, appellees agreed to make the loans in exchange for receiving, as collateral for the loans, security interests in appellants' future periodic payments from the structured settlements.

In 2001, appellants filed a declaratory judgment action against appellees seeking a determination that the pledges of their respective structured settlement payments as security for the loans are prohibited, and, as a result, are void.[3] Appellants filed a motion for partial summary judgment, contending that the pledges are prohibited by the insurance code, the structured settlement documents, and public policy. Settlement Capital and Merrick/Singer Asset also filed motions for summary judgment, contending that the pledges are enforceable and that the insurance code only prohibited assignments and commutations, not security interests.

In its order granting Settlement Capital's motion for summary judgment, the court stated:

> Article 21.22 does not prohibit Settlement Capital from entering into transactions whereby an annuitant grants Settlement Capital a security interest in his or her rights to structured settlement payments and/or the annuity payments that fund structured settlement payments as a matter of law; that the loan documents between Angela Douglas and Settlement Capital are valid and enforceable as a matter of law; and that Settlement Capital has a valid security interest in Plaintiff Angela Douglas' rights to structured settlement payments and/or the annuity payments that

fund structured settlement payments as a matter of law. . . .

The order granting Merrick/Singer Asset's motion did not state the grounds on which it was based. The court impliedly denied appellants' motion. For the reasons set out below, we affirm the trial court's judgment.

## STANDARD OF REVIEW

■ We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied). When, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, we review both sides' summary judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000).

■ In our review, we should consider all summary judgment grounds the trial court ruled on that are preserved for appellate review and are necessary for final disposition of the appeal. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 627 (Tex.1996). In the interest of judicial economy, we also may consider grounds preserved for review that the trial court did not rule on. *Id.* When the trial court does not specify the basis for its ruling, it is the appellant's burden on appeal to show that none of the independent grounds that were asserted in support of summary

---

uments with Coffey, Kisor, and Wallace to Singer Asset. For purposes of this appeal, we refer to Merrick and Singer Asset collectively as Merrick/Singer Asset.

**3.** Appellants did not seek to void their *loans.* Instead, they sought to void the *liens* created by the security agreements given as collateral

for the loans. They argue voiding the liens would not eliminate their debts with appellees, although they concede it would convert the debts from secured to unsecured loans. Appellants also filed claims for usury, fraud, deceptive trade practices, and negligent misrepresentation. They nonsuited those claims.

judgment is sufficient to support the judgment. *See Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995); *Caldwell v. Curioni,* 125 S.W.3d 784, 789 (Tex.App.-Dallas 2004, pet. denied). And, when the trial court's order granting summary judgment does not specify the grounds upon which it was granted, we will affirm the judgment if any of the theories advanced are meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 567 (Tex.1989). In this case, the facts are undisputed; the questions presented are purely legal ones.

### ANALYSIS

### I. Are These Transactions Prohibited by the Insurance Code?

In their first issue, appellants contend that, because their structured settlement documents contain provisions against assignment or commutation by the beneficiary, appellees' attempts to obtain security interests in the structured settlement payments are prohibited by former article 21.22, section 5, of the insurance code.[4]

Article 21.22 of the insurance code exempts certain annuity contract benefits from seizure and appropriation to pay any debt or liability of the insured or of any beneficiary.[5] Section 5 of that article states:

> Wherever any policy of insurance, annuity contract, or plan or program of annuities and benefits mentioned in Section 1 of this article shall contain a provision against assignment or commutation by any beneficiary thereunder of the money or benefits to be paid or rendered thereunder, or any rights therein, any assignment or commutation or any attempted assignment or commutation by such beneficiary of such money or benefits or rights in violation of such provision shall be wholly void.[6]

Appellants concede that no Texas case has addressed whether article 21.22 applies to structured settlements and cite cases from other jurisdictions to support their arguments. Appellants also concede that the loans at issue here expressly state they are secured by "Collateral," which the loan documents define as the periodic payments due appellants pursuant to the structured settlement agreements. But appellants, citing bankruptcy cases, argue a pledge is the same as an assignment for purposes of anti-assignment statutes. They also argue that appellees' loan documents effect a commutation of the structured settlement payments because they substitute a lump sum payment for the periodic payments. Appellants contend the distinction between the loan documents at issue here and an assignment or commutation is only one of semantics.

Conversely, appellees argue section 5 of article 21.22 does not apply in this case because the loan transactions created security interests in the structured settlement payments and are not assignments or commutations of those payments. Appellees

4. *See* Act of June 17, 1993, 73rd Leg., R.S., ch. 685, § 20.20, § 5, 1993 Tex. Gen. Laws 2559, 2706 (formerly codified at TEX. INS.CODE ANN. art. 21.22 § 5 (Vernon 1981)), *repealed by* Act of May 22, 2001, 77th Leg., R.S., ch. 1419 § 31(a), 2001 Tex. Gen. Laws 4208, 4208. This provision is now codified at TEX. INS.CODE ANN. § 1108.102 (Vernon Supp. 2006), and did not become effective until June 1, 2003, after the date this lawsuit was filed.

5. *See* Act of June 17, 1993, 73rd Leg., R.S., ch. 685, § 20.20, § 1, 1993 Tex. Gen. Laws 2559, 2706 (formerly codified at TEX. INS.CODE ANN. art. 21.22 § 1 (Vernon 1981)) (subsequent amendments omitted) (now codified at TEX. INS.CODE ANN. § 1108.051 (Vernon Supp. 2006)).

6. *See* Act of June 17, 1993, 73rd Leg., R.S., ch. 685, § 20.20, § 5, 1993 Tex. Gen. Laws 2559, 2706.

also argue section 3 of article 21.22 expressly permits an insured or beneficiary to pledge future annuity payments as security for a debt. Section 3 states:

> The exemptions provided by Section 1 of this article do not apply to: ... (2) a debt of the insured or beneficiary secured by a pledge of the policy or its proceeds.... [7]

### Merrick/Singer Asset's Loan Documents

Coffey, Wallace, and Kisor each signed loan agreements, promissory notes, and security interest agreements to obtain loans from Merrick/Singer Asset. The loan agreements state, in relevant part:

> Borrower hereby applies for and requests Lender to make a loan ... to Borrower in the principal loan amount specified in the Terms Rider ... and to be evidenced by a Secured Promissory Note.... If Borrower's application is accepted, *the Loan Payments shall be secured by all or a portion of the Periodic Payments as Collateral for the loan* ... as specified in the Terms Rider. Borrower's obligation to pay Lender is to be secured by a Security Agreement ... given by Borrower to Lender and in Lender's favor according to the Uniform Commercial Code *pledging the Collateral and perfecting the secured interest in the Collateral* by execution and delivery of a UCC–1 financing statement....
>
> * * *
>
> **2. Pledge of Collateral.** *Borrower hereby grants a security interest in and pledges to Lender, Borrower's right, title and interest in and to the Collateral* ....

(emphasis added).

In relevant part, the security interest agreements state:

**1. Grant of Security Interest.** In consideration of the covenants and agreements contained herein, and financial accommodations given, to be given, or continued, *Borrower hereby grants to Lender a continuing security interest in all of the Collateral* described in Paragraph 2 hereof. The security interest created by this Agreement attaches to the Collateral immediately upon execution hereof without further act by Borrower or Lender and secures payment of all debts, obligations, and liabilities now or hereafter existing, absolute or contingent, and further advances owing to Lender by Debtor, including, without limitation, pursuant to the Loan Application and Loan Agreement dated the date hereof ... between Lender and Borrower, pursuant to the Promissory Note dated the date hereof ... by Borrower in favor of Lender and pursuant to this Security Agreement....

> * * *
>
> **5. Remedies.**
>
> * * *
>
> The Lender, in addition to any remedies provided by law or in this Security Agreement, and to the extent provided by law, may:
>
> * * *
>
> **4.** *Lien.* Notify the [Safeco Assigned Benefits Service Company] and/or the Annuity Issuer of Borrower's default and *enforce a lien on the Collateral.*

(emphasis added).

### Settlement Capital's Loan Documents

In connection with her loan, Douglas executed a security agreement with Settlement Capital stating, in relevant part:

---

7. *See* Act of June 15, 1991, 72nd Leg., R.S., ch. 609, § 3, 1991 Tex. Gen. Laws 2217, 2218 (formerly codified at TEX. INS.CODE ANN. art. 21.22 § 3 (Vernon 1981)) (subsequent amendments omitted) (now codified at TEX. INS.CODE ANN. § 1108.053(2) (Vernon Supp.2006)).

2.1 As collateral security for the prompt and timely payment and performance of the Promissory Note and the Obligations, *Debtor does hereby pledge and grant to Secured Party a first priority security interest in (i) all of the Debtor's right, title, and interest in and to the Collateral;* (ii) all of Debtor's right, title and interest in and to the Term Payments; (iii) all of Debtor's right, title, and interest in and to all other payments which hereafter come due and payable in connection with the Collateral, whether during the Term or afterwards; and (iv) to the extent not otherwise included, all accessions, substitutions, replacements, betterments, proceeds, and products of any of the foregoing. The parties acknowledge and agree that the Term Payments are included in the Collateral.

2.2 *The security interest granted herein … shall secure the prompt and complete payment and performance when due of the Promissory Note and the Obligations,* together with any and all renewals and extensions of such debts, obligations and liabilities, or any part thereof, including but not limited to the indebtedness evidenced by the Promissory Note and/or the Obligations. *Upon full payment of the Obligations, the Security Interest shall, at the request of Debtor, be released by Secured Party.*

* * *

3.4 *This Agreement creates a valid and perfected first priority security interest in the Collateral,* the Term Payments, and the other rights, benefits, and payments to which Debtor is entitled in connection with the Collateral and this Agreement is intended to secure the payment of the Promissory Note and the Obligations.

* * *

6.1 In addition to the rights and remedies granted to Secured Party herein, Secured Party shall at all times have and enjoy the rights and remedies of a secured party under the Texas UCC, the Uniform Commercial Code, and other applicable laws.

(emphasis added).

## Assignment or Commutation?

■ We do not agree with appellants that the distinction between the language in the loan documents in this case and the terms "assignment" or "commutation" in the insurance code is only one of semantics.

■ We first look to the meanings of the words. Because the insurance code does not define "assignment" or "commutation," we apply the common meanings of those words. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865–66 (Tex.1999) (look at plain, common meaning of words used in statute). An assignment in its most general sense means the transfer or setting over of property, or some right or interest. *Johnson,* 148 S.W.3d at 721. In an absolute assignment, the assignor loses all control over the property assigned and can do nothing to defeat the rights of the assignee. *See id.* at 722; *Commercial Structures and Interiors, Inc. v. Liberty Educ. Ministries, Inc.,* 192 S.W.3d 827, 835 n. 4 (Tex.App.-Fort Worth 2006, no pet.); *Univ. of Tex. Med. Branch at Galveston v. Allan,* 777 S.W.2d 450, 453 (Tex.App.-Houston [14th Dist.] 1989, no writ).

The distinction between an assignment and a lien was explained in *Highland Park State Bank v. Salazar,* 555 S.W.2d 484, 488 (Tex.Civ.App.-San Antonio 1977, writ ref'd n.r.e.), where the plaintiff pledged his savings account as collateral for a truck loan, and the bank appropriated its balance after plaintiff defaulted. Unknown to the

bank, the plaintiff received workers compensation benefits and deposited them in the savings account. The plaintiff argued the appropriation was wrongful because assignment of workers compensation benefits was prohibited by statute. *Id.* at 485–86. The court distinguished between an assignment of the benefits and a pledge of those benefits, stating "It is almost universally recognized that there is a distinction between an assignment and the creation of a mere lien." *Id.* at 488. The court noted that a lien is a charge on the property, whereas an assignment creates an interest in the property. *Id.* The court concluded the pledge of the savings account was not an assignment of the compensation benefits. *Id.*

We also do not agree with appellants' argument that the following language in the security agreements effects an assignment: "[appellants] GRANT, CONVEY, COLLATERALLY ASSIGN, PLEDGE, TRANSFER, SET OVER, AND CONVEY" the collateral to appellees.

■ To "collaterally assign" means to assign property as collateral security for a loan. Black's Law Dictionary 128 (8th ed.2004). Additionally, a "pledge" is a transaction by which the collateral security is delivered by the debtor and accepted by the creditor, but legal title does not pass to the secured party. *See McAllen State Bank v. Texas Bank & Trust Co.,* 433 S.W.2d 167, 171 (Tex.1968) (elements of "pledge" include possession of the pledged property passing from pledgor to pledgee, legal title of pledged property remaining in pledgor, and pledgee having lien on property for payment of debt); *Bullock v. Foster Cathead Co.,* 631 S.W.2d 208, 210 (Tex. App.-Corpus Christi, 1982, no writ) (same).

Consequently, these documents do not contain language that we can construe to constitute an assignment. *See Vaughan v. John Hancock Mut. Life Ins. Co.,* 61

S.W.2d 189, 190 (Tex.Civ.App.-Fort Worth 1933, writ ref'd) (concluding "lien" created by document could not be interpreted to mean "sale," "transfer," "delivery," "assignment," or "bill of sale"). In fact, the documents specifically state that appellants pledge their future periodic payments as collateral for loans, and each transaction includes a security agreement creating a security interest in the collateral.

Additionally, the security agreements contain language that terminates the agreements and the security interests when the loans are paid in full. Specifically, the Merrick/Singer Asset security agreements state:

**6. Termination.**

Upon Borrower's complete and absolute satisfaction and payment of the Indebtedness ... Lender shall ... take such action as may be necessary to terminate Lender's interest in the Collateral, including, but not limited to, executing Secretary of State Form UCC–3.

And the Settlement Capital agreement states:

7.4 ... [T]his Agreement shall automatically terminate when the Promissory Note and the Obligations are paid in full.

This language supports our conclusion that these transactions are not assignments because the security interests in the collateral terminate upon payment in full of the loan amounts. *See McAllen State Bank,* 433 S.W.2d at 171 (stating one element of "pledge" is right to redeem pledged property remains in pledgor).

■ We also do not agree that the security interests are commutations. A commutation is "an exchange or replacement," and a "commutation of payments" is a "substitution of lump-sum compensation

for periodic payments." BLACK'S LAW DICTIONARY 297. On the other hand, a security interest is an interest in personal property that secures payment or performance of an obligation. TEX. BUS. & COM.CODE ANN. § 1.201(35) (Vernon Supp.2006). These transactions are not commutations because appellants did not exchange their periodic payments for the loans. Instead, they borrowed money from appellees and pledged the periodic payments to secure repayment of those loans. Appellants continued to receive the periodic payments, but they redirected those payments to appellees in payment of the loans.

In summary, we conclude the unambiguous language of the agreements created a lien on the structured settlement payments and did not assign those payments to appellees or effect a commutation of the payments.

■ Finally, we also reject appellants' contention that the creation of a lien is prohibited by article 21.22. In fact, section 3 of that article specifically permits the pledge of the proceeds of annuity contracts as security for a debt.[8] If we adopted appellants' interpretation that section 5 prohibits appellants from granting appellees a security interest in structured settlement payments, we would have to read section 3 out of the statute. This we cannot do. *See Helena Chemical Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex.2001) (court should not give one statutory provision meaning out of harmony or inconsistent with other provisions).

We conclude the trial court did not err by granting appellees' motions for summary judgment on this basis. We overrule appellants' first issue.

## II. Are These Transactions Prohibited by Common Law?

■ In their second issue, appellants contend the trial court erroneously denied their motion for partial summary judgment because their structured settlement agreements prohibit the assignment, transfer, or encumbrance of the periodic payments, and Texas law generally gives full force and effect to such provisions in a contract. Appellees argue appellants waived the anti-assignment provisions of their structured settlements and are estopped from raising them now, citing our opinion in *Johnson*.[9] We agree.

The facts of this case are very similar to those in *Johnson*. In *Johnson*, appellant filed and settled a lawsuit seeking recovery for injuries he sustained when he was struck by a car. As part of the settlement, Johnson received a lump sum payment, as well as future structured settlement payments from 1986 until 2026. The terms of the settlement agreement provided that Johnson could not "sell or mortgage or encumber [the payments], ... by assignment or otherwise." The insurance company that was obligated to make the payments to Johnson purchased an annuity to fund those payments. Johnson did not own the annuity. Johnson began receiving the periodic payments in 1986. In February 1998, he saw a television commercial

8. *See* Act of June 15, 1991, 72nd Leg., R.S., ch. 609, § 3, 1991 Tex. Gen. Laws 2217, 2218.

9. Appellants argue Merrick/Singer Asset did not preserve the issue of waiver and Settlement Capital did not preserve either the estoppel or waiver issue. However, our review of the record shows Merrick/Singer Asset argued, in response to appellants' motion for partial summary judgment, that Coffey, Wallace, and Kisor waived the anti-assignment language in their settlement agreements and that Settlement Capital raised the issue of estoppel by contract against Douglas in its supplemental motion for summary judgment. As a result, we conclude the issues were preserved.

for Stone Street Capital, Inc., advertising it would pay a lump sum in return for the assignment of future payments due under structured settlements. Johnson called the advertised number, applied, and received a written offer to purchase a portion of his future monthly payments. Johnson accepted the offer, and Stone Street paid him over a hundred thousand dollars in exchange for Johnson's assignment of a portion of his future monthly payments. Johnson used the money to buy a house and to complete the loan payments on his truck. As part of the purchase agreement with Stone Street, Johnson instructed the annuity company to redirect the monthly payments to Stone Street. However, in February 1999, without consulting Stone Street, Johnson instructed the annuity company to send the monthly payments to a different address. By doing this, Johnson redirected the payments to himself instead of Stone Street. Stone Street sued. Ultimately, the annuity company filed an interpleader action to determine where it should send the payments. At trial, Johnson argued the anti-assignment provision in his settlement agreement prohibited the assignment to Stone Street. He also argued the assignment violated public policy. The trial court disagreed. It concluded Johnson waived the anti-assignment provision in the settlement agreement and was estopped from raising the anti-assignment clause as a defense. It also concluded the assignment did not violate public policy. We affirmed. *Johnson*, 148 S.W.3d at 711–31.

The primary difference between *Johnson* and this case is that, in *Johnson*,

appellant actually assigned ownership of his right to receive future periodic payments, whereas, here, appellants granted security interests in the future periodic payments to appellees and retained ownership of the right to receive those payments.[10] As in *Johnson*, the settlement agreements and annuities in this case each prohibit appellants' assignment, transfer, or encumbrance of the periodic payments due under the structured settlements.[11] However, as in *Johnson*, appellants voluntarily signed the loan documents granting appellees security interests in a portion of their periodic payments.

## Coffey/Wallace/Kisor Waivers

In *Johnson*, we addressed whether a party can waive an anti-assignment provision in a contract. Based on our review of Texas case law, we concluded a party can waive contractual rights by the party's "express renunciation" of that right. *Id.* at 722. In *Johnson*, the purchase agreement contained an express waiver of the anti-assignment provision in his structured settlement agreement. *Id.* at 724. We concluded Johnson expressly waived any contractual right he had to assert the anti-assignment provision of his settlement agreement by executing the purchase agreement containing a "waiver of restrictions on assignability" provision. *Id.* We also concluded that Johnson's intention to yield or waive his rights under the anti-assignment provision was demonstrated by his silence or failure to object to Stone Street's receipt of the monthly payments for approximately eleven months. *Id.* at 724–25.

---

**10.** Additionally, we did not address in *Johnson* whether the provisions of the insurance code applied to prevent an assignment of structured settlement payments.

**11.** The record does not contain a copy of Douglas's annuity. However, a letter addressed to her concerning the annuity states the annuity may not be pledged as collateral for a loan.

In this case, Coffey, Wallace, and Kisor also expressly renounced the anti-assignment provisions in their settlement agreements. The Merrick/Singer Asset loan agreements they signed each contain the following waiver provision:

n. Any and all restrictions on the ability to pledge the Collateral were included in the Release and/or Annuity solely at Borrower's request and for Borrower's benefit and not for the benefit or protection of any other person. Any such restriction was included by Borrower as a precautionary measure in order to assure the Borrower of certain favorable tax treatment under Internal Revenue Code (the "Code") Section 104(a)(2). Whether or not such precautionary measure was necessary, Borrower now decides to forego said favorable treatment. Borrower acknowledges that all income realized by Borrower after closing upon any investment or use of the Loan Amount (unless exempt under a separate Code provision (e.g. interest earned on municipal bonds)) may be taxable to Borrower under the Code and that this transaction may result in an increase in the amount of income taxes paid by Borrower to the Internal Revenue Service. For the benefit of Lender, Lender's Assignee and/or their successors and assigns, the Annuity Owner and on behalf of Borrower and Borrower's estate, heirs, beneficiaries, executors, administrators, and legal representatives, Borrower hereby WAIVES AND RELEASES all rights of Borrower in, to, or under, such restrictions on the ability to pledge, if any.

Additionally, Coffey settled her personal injury lawsuit in April 1989. She executed a loan application and agreement with Merrick/Singer Asset on December 10, 1999. And Wallace settled personal injury lawsuits for herself and her daughter in August 1994. They executed loan applica-

tions and agreements with Merrick/Singer Asset on November 10, 1999. None officially complained about Merrick/Singer Asset's receipt of the monthly payments until the lawsuit was filed on March 30, 2001.

We conclude, based on our opinion in *Johnson,* that Coffey, Wallace, and Kisor waived the contractual right to enforce the anti-assignment provision of the settlement agreements by executing these security and loan agreements with Merrick/Singer Asset.

**Douglas Estoppel by Contract**

Douglas did not expressly renounce the anti-assignment provision in her settlement agreement when she executed the loan documents with Settlement Capital. However, she voluntarily signed the loan agreements and accepted the lump sum payment Settlement Capital offered in exchange for a security interest in those payments three times. Appellees argue Douglas is estopped from asserting the anti-assignment provision. We agree.

In *Johnson,* we discussed the doctrine of estoppel by contract and how a party may be estopped where his conduct induced action in reliance upon it, and that it would operate as a fraud upon the assured to allow the party to disavow their conduct. *Johnson,* 148 S.W.3d at 721–22. We said the doctrine of estoppel by contract is another way of saying "a party is bound by the terms of his contract unless it is void, annulled, or set aside in some way." *Id.* at 722.

Douglas represented in the security agreement she executed with Settlement Capital that she had the power to pledge and encumber the periodic payments:

3.1 [Douglas] has the power, authority, and legal right to enter into this Agreement, to grant to [Settlement Capital] a first priority security interest in

the Collateral, and to pledge and encumber the Collateral and the Term Payments and to make the collateral assignments provided herein. The execution, delivery and performance of this Agreement and the other Loan Documents and the grant of the security interest and making of the collateral assignments under the terms of this Agreement do not contravene, breach, or violate the terms of any indenture, contract or agreement to which [Douglas] is a party or by which [Douglas] is bound. This Agreement, when executed and delivered, will constitute a legal, authorized, valid and binding obligation of [Douglas] enforceable in accordance with its terms.

■■■ Douglas granted Settlement Capital a security interest in her future periodic payments as collateral for the three loans Settlement Capital made to her. She now asks us to void the liens and render judgment that Settlement Capital's loans are unsecured. However, estoppel by contract will not permit a party to a contract to take a position inconsistent with the contract's provisions, to the prejudice of another. *Id.* at 721–22 (citations omitted). Additionally, Douglas settled her personal injury lawsuit in February 1998 and executed three different loan applications and agreements in 1999 and 2000. She did not officially complain about Settlement Capital's receipt of the monthly payments until she filed this lawsuit in 2001. We conclude Douglas is estopped from now disavowing her agreement with Settlement Capital.

We overrule appellants' second issue.

**III. Do These Transactions Violate Public Policy?**

■■■ In their third issue, appellants argue the trial court erred by denying their motion for partial summary judgment in which they contended public policy prohibits granting security interests in structured settlement payments. We disagree.

This same issue was also raised in *Johnson*. We analyzed the Internal Revenue Code; decisions of Texas courts; decisions of other state, as well as federal, courts; the Texas Structured Settlement Protection Act,[12] which requires court approval of the transfer of structured settlement payments; and similar acts in other states. We concluded public policy does not prevent the assignment of future periodic payments from a structured settlement. *Id.* at 726–31. For the same reasons, we conclude public policy does not prevent the transactions in this case.

We overrule appellants' third issue.

CONCLUSION

We conclude the loan transactions in this case are not assignments or commutations of appellants' structured settlement payments but, instead, create security interests in those payments. And section 5 of article 21.22 does not apply to void these security interests. As a result, we conclude the trial court did not err when it granted Settlement Capital's motion for summary judgment on this basis. Because this was one basis upon which the trial court could have granted Merrick/Singer Asset's motion, we further conclude the trial court did not err when it granted Merrick/Singer Asset's motion for summary judgment.

We also conclude appellants waived, or are estopped from asserting, the anti-assignment provisions in their settlement

---

12. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 141.001–007 (Vernon 2005). This act applies to all transfer agreements entered into on or after September 1, 2001. Its provisions state it may not be construed to imply that any transfer under a transfer agreement entered into before September 1, 2001, is valid or invalid. *Id.* § 141.007(e).

agreements, and the transactions in this case do not violate public policy. As a result, we conclude the trial court did not err by impliedly denying appellants' motion for partial summary judgment. Because these issues are dispositive, we do not reach appellants' fourth issue asserting the Uniform Commercial Code does not apply to these transactions.

We affirm the trial court's judgment.