NUMBER 13-07-093-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


NORTHFIELD INSURANCE COMPANY, Appellant,


v.



NABORS CORPORATE SERVICES,

INC., F/K/A POOL OFFSHORE

SERVICES, Appellee.

 


On appeal from the 157th District Court of Harris County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Benavides, and Vela


Memorandum Opinion by Justice Yañez



 This appeal involves a claim for payment of attorneys' fees arising from an
indemnity dispute. By two issues, appellant, Northfield Insurance Company ("Northfield"),
contends the trial court erred in granting summary judgment in favor of appellee, Pool
Company Texas, Ltd. ("Pool"). (1) Specifically, Northfield contends that: (1) Pool breached
its mutual indemnity agreement with Northfield's insured and third-party defendant,
Abraxas Petroleum Company ("Abraxas"), by suing Abraxas for reimbursement, and (2)
Northfield is entitled to attorneys' fees it incurred in the instant suit. We affirm the
summary judgment in favor of Pool.

Background 


 As Pool notes, the facts and course of proceedings in this case are "best described
as circuitous." In an earlier related appeal involving the parties, (2) the Fourteenth Court of
Appeals set out the relevant facts, which we incorporate here.

In 1997, Abraxas hired Pool to perform work on an oil and gas lease owned
and operated by Abraxas. As is customary in the oil and gas industry,
Abraxas and Pool entered into a Master Service Agreement (the
"Agreement") which contained, in part, mutual indemnity provisions whereby
each party agreed to indemnify the other for any claims or causes of action,
without limit, for any injuries or death suffered by their respective employees. 
In the Agreement, each party also agreed to acquire insurance to cover
these indemnity obligations[ (3)] in accordance with the safe harbor provisions
of the [Texas Oilfield Anti-Idemnity Act ("TOAIA")[ (4)]. Pool's general liability
insurer was Reliance Insurance Company ("Reliance")[ (5)] and Abraxas was
insured by Northfield.


In 1999, a Pool employee, Michael Carter, was fatally injured. Carter's heirs
and estate filed suit (the "Carter litigation") against Abraxas, and other
defendants not parties to this appeal, asserting negligence claims. When
Abraxas presented the claim to Northfield, Northfield hired counsel to
represent Abraxas; counsel, in turn, contacted Pool and demanded Pool
defend and indemnify Abraxas in accordance with the Agreement. Pool
agreed, subject to its right under Texas law to deny indemnification for any
grossly negligent conduct by Abraxas or any award for punitive damages. 
Pool then hired counsel to defend Abraxas. 


In September 2001, the Carter litigation was settled on behalf of Abraxas for
$ 1,545,000.[ (6)] However, prior to funding the settlement, Pool's insurer,
Reliance, became insolvent.[ (7)] Suit was filed by the Carter plaintiffs against
Abraxas to enforce the settlement agreement, and Abraxas looked to Pool
by virtue of the indemnity provision contained in the Agreement. Pool
contributed $ 1,000,000 to the settlement by Abraxas, reserving all rights and
causes of action, then demanded reimbursement from Northfield.
Consequently, Northfield filed this declaratory judgment action, asserting it
did not owe any reimbursement to Pool. Pool filed counterclaims against
Northfield and third-party claims against Abraxas,[ (8)] alleging both parties had
violated the [Texas Property and Casualty Insurance and Guaranty Act] and
asserting claims for indemnity and unjust enrichment against both parties. 
Northfield filed a "Motion to Dismiss and/or Summary Judgment," requesting
the trial court dismiss Pool's claims against Abraxas and Abraxas's claims
against Northfield in the event Abraxas should be held liable to Pool for any
reimbursement.


The trial court signed a final judgment granting Northfield's motion and (1)
dismissing with prejudice, Pool's claims against Abraxas and Northfield; (2)
dismissing without prejudice, Abraxas's counterclaims against Pool; and (3)
dismissing as moot, Abraxas's cross-claims for reimbursement against
Northfield. The trial court severed all other remaining claims to permit appeal
of the judgment. (9)


The Fourteenth Court affirmed the trial court's summary judgment in favor of Northfield and
Abraxas, holding that the TOAIA (1) did not alter Pool's indemnity obligation, just because
its insurer became insolvent, and (2) did not require Abraxas to reimburse Pool for the
money it paid to settle the underlying claim. (10) 

 The claims in the present case were abated while the severed claims in Nabors v.
Northfield were appealed to the Fourteenth Court. Northfield's claims in the present case
are: (1) that by failing to defend Abraxas, Pool breached its Agreement with Abraxas; (2)
alternatively, that Northfield is entitled to contribution from Pool under chapter 33 of the civil
practice and remedies code (11) for any sums it may be required to pay to Abraxas; and (3)
that it is entitled to recover from Pool its own attorneys' fees and those incurred by
Abraxas. (12)

 On November 22, 2005, Pool filed an amended traditional motion for summary
judgment, (13) in which it asserted that it was entitled to summary judgment:

on Northfield's claims for contribution and indemnity because there is no
legal basis upon which Pool is required to indemnify Northfield for
Northfield's conduct in refusing to defend and indemnify Abraxas, or for the
attorneys' fees incurred by Abraxas in defending itself against Pool's
compulsory claims in Nothfield's declaratory judgment action. Moreover,
Northfield is not entitled to contribution pursuant to Chapter 33 of the Texas
Civil Practice and Remedies Code. 


 Likewise, Pool is entitled to summary judgment as a matter of law on
Abraxas' claims because the attorneys' fees that were incurred by Abraxas
were not within the scope of the indemnity agreement between Abraxas and
Pool, and the attorneys' fees Abraxas incurred are not recoverable from Pool
as damages. Additionally, Abraxas is not entitled to reimbursement from
Pool for any monies it paid to settle its gross negligence exposure in the
Carter litigation because Pool's indemnity obligation was limited to
$1,000,000, and Pool satisfied its obligation when it tendered $1,000,000 to
settle the Carter litigation. Additionally, Abraxas accepted Pool's qualified
offer to defend and indemnify Abraxas in the Carter litigation for all claims
except gross negligence claims or punitive damages, and has therefore,
waived any claims for reimbursement. 


Pool attached the following summary judgment evidence:

(1) the Master Service Agreement;

(2) February 8, 1999 correspondence from Pool's counsel to Abraxas's counsel;

(3) an April 1, 2002 letter from Pool's counsel to Abraxas's and Northfield's counsel
regarding Pool's right to seek reimbursement of settlement funds;

 

(4) an April 9, 2002 letter from Abraxas's and Northfield's counsel to Pool's counsel
regarding the same subject;


(5) the Fourteenth Court's opinion in Nabors Corporate Servs. v. Northfield Ins. Co.; 

(6) Abraxas's First Amended Cross-Claim against Northfield;

(7) Northfield's Third-Party Petition against Pool; and 

(8) Abraxas's Alternative Cross-Claim against Pool. 

On December 8, 2005, Northfield filed a response to Pool's amended motion for summary
judgment. 

 On November 30, 2005, Northfield filed an amended traditional motion for summary
judgment, (14) in which it noted that (1) it had purchased an assignment of all of Abraxas's
claims against Pool, and (2) Abraxas had dismissed all its claims against Northfield. (15) In
its motion, Northfield argued that by suing Abraxas for reimbursement, Pool breached the
Agreement between Pool and Abraxas. Northfield also argued that it was entitled to
recover Abraxas's attorneys' fees and its own attorneys' fees from Pool . (16) As evidence
in support of its motion, Northfield incorporated the evidence attached to its August 17,
2004 motion, which included: (1) Pool's answer and counter-claims against Northfield in
the severed litigation; (2) Northfield's insurance policy with Abraxas; (3) letters between
Northfield and Abraxas regarding Northfield's alleged duty to defend Abraxas in the claims
brought by Pool; (4) a copy of the Carter plaintiffs' petition; (5) a copy of Abraxas's cross-claim against Northfield, alleging breach of its insurance policy with Northfield; (6)
Abraxas's counter-claim against Pool, alleging that Pool breached the Agreement; (7)
copies of invoices for attorneys' fees submitted to Abraxas; (8) a copy of the petition to
enforce the settlement in the Carter litigation; (9) a copy of Abraxas's third-party claims
against Pool, alleging breach of Pool's indemnity obligations under the Agreement; (10) the
Carter plaintiffs' motion for summary judgment for enforcement of the settlement
agreement; and (11) a letter confirming Abraxas's agreement to pay $1,545,000 in
settlement of the Carter litigation. On December 29, 2005, Pool filed a response to
Northfield's motion for summary judgment. 

 On September 21, 2006, the trial court denied Northfield's Amended Motion for
Summary Judgment, and on November 15, 2006, entered a take-nothing judgment in
Pool's favor on all claims asserted against it by Northfield and Abraxas. 

Standard of Review 


 We review the trial court's grant of summary judgment de novo. (17) When both parties
move for summary judgment, we indulge all reasonable inferences and resolve all doubts
in favor of the losing party. (18) When both parties move for summary judgment on the same
issues and the trial court grants one motion and denies the other, the reviewing court
considers the summary-judgment evidence presented by both sides, determines all
questions presented, and if it determines the trial court erred, renders the judgment the trial
court should have rendered. (19) 

 When the trial court does not specify the basis for its ruling, it is the appellant's
burden on appeal to show that none of the independent grounds that were asserted in
support of summary judgment is sufficient to support the judgment. (20) Thus, when the trial
court's order granting summary judgment does not specify the grounds on which it was
granted, we will affirm the summary judgment if any of the theories advanced support the
judgment. (21) 

Discussion 


 The trial court's order denying Northfield's motion for summary judgment does not
specify the basis for its ruling. Thus, Northfield has the burden on appeal to show that
none of the grounds asserted in support of Pool's motion for summary judgment is
sufficient to support the judgment. (22) 

 In Northfield's amended motion, it moved the trial court to hold that Pool breached
its Agreement with Abraxas by suing it for reimbursement of the funds Pool paid in
settlement of the Carter litigation. Northfield argued that the Nabors court determined that 
Pool's Agreement with Abraxas was valid. (23) Thus, Pool's decision to sue Abraxas was "an
obvious breach of the indemnity agreement." Northfield also argued that it is entitled to
recover (1) its own attorneys' fees, and (2) pursuant to its purchase of the assignment of
Abraxas's claims, attorneys' fees incurred by Abraxas. 

 In its first issue, Northfield argues that even though Pool eventually funded the
settlement made on Abraxas's behalf, it initially refused to do so, and thereby breached 
the Agreement with Abraxas. Northfield argues that the Agreement between Pool and
Abraxas contemplates that litigation may be necessary to determine the extent of the
indemnity, and thus provides that legal costs involved with enforcing the indemnification
provisions are recoverable as damages. The provision of the Agreement cited by
Northfield states: "In the event one party must bring legal action in order to enforce an
indemnification, all such legal costs shall be included as part of the indemnification."

 Northfield also argues that Abraxas's attorneys' fees are recoverable under chapter
38 of the civil practice and remedies code (24) and under the Uniform Declaratory Judgment
Act ("the DJA"). (25) Northfield points to the affidavit of Michael Orlando, counsel for Abraxas,
as evidence in support of the claim for attorneys' fees in the amount of $283,782.99.

 By its second issue, Northfield argues that it is entitled to recover its own attorneys'
fees pursuant to the DJA; (26) Northfield argues that it sought a declaratory judgment that
Pool was responsible for funding the Carter settlement, and the Nabors court so held. 
Northfield points to the affidavit of John C. Tollefson, which states that Northfield's
attorneys' fees were $85,251.57. (27) 

 In its response to Northfield's amended motion, Pool argued that it satisfied its
obligations under the Agreement by funding the Carter settlement, and reserved its right
to seek reimbursement from Abraxas and Northfield. In response to Northfield's claim that
Pool's third-party claim against Abraxas constituted a breach of the Agreement, Pool made 
several arguments. First, Pool argued that when Northfield sued Pool, it was forced to
bring Abraxas into the litigation, because Northfield was asking the trial court to construe
the Agreement between Pool and Abraxas, and Abraxas's interests would thereby be
affected by the court's decision. Second, Pool argued it was entitled to pursue its
reimbursement claims because the parties agreed in writing that Pool preserved its right
to seek reimbursement of the settlement funds. (28) 

 Pool also argued that in Frank's Casing, the Texas Supreme Court found that a
party is entitled to settle with an injured party and subsequently challenge coverage and
seek reimbursement. (29) Pool cited the supreme court's 2005 opinion in Frank's Casing,
which was subsequently withdrawn and a new opinion issued, as explained in a recent law
review article:

In a much anticipated opinion, Excess Underwriters at Lloyd's, London v.
Frank's Casing Crew & Rental Tools, Inc., the Texas Supreme Court
revisited the issue of whether an insurer is entitled to reimbursement from its
insured of amounts it paid to settle third-party claims against the insured
when it later determined that those claims are not covered under the policy. 
The supreme court first addressed this issue in 2000, in Texas Association
of Counties County Government Risk Management Pool v. Matagorda
County,[ (30)] holding that an insurer may seek reimbursement only if it "obtains
the insured's clear and unequivocal consent to the settlement and the
insurer's right to seek reimbursement." In its original opinion in Frank's
Casing, the supreme court had "clarified" Matagorda County and had
expanded the insurer's right of reimbursement to include the additional
circumstances: (1) when the insured demands that the insurer accept a
settlement offer that is within policy limits, or (2) when the insured expressly
agrees that the settlement offer should be accepted. 


The supreme court granted rehearing in Frank's Casing on January 6, 2006,
and on February 1, 2008, withdrew its prior opinion and issued a new
opinion. The supreme court expressly declined to overrule Matagorda
County, reiterating that in weighing the varying risks surrounding settlement
offers when coverage is disputed, "insurers, on balance, are better
positioned to handle them 'either by drafting policies to specifically provide
for reimbursement or by accounting for the possibility that they may
occasionally pay uncovered claims in their rate structure.'"


The supreme court next addressed whether the case was sufficiently
distinguishable from Matagorda County to justify an exception to the
Matagorda County rule and thereby permit reimbursement based on the
insured's implied consent. The underwriters emphasized that (1) they were
excess carriers who did not have a duty to defend or otherwise have
unilateral control over settlement, (2) the policy prohibited settlement without
the insured's consent, and (3) the insured had demanded that the
underwriters settle the claim. Reasoning that "none of these distinctions
alleviates the concerns that drove the supreme court's analysis in Matagorda
County," the supreme court declined to recognize an exception to the
Matagorda County rule and accordingly refused to find an implied-in-fact
agreement. The supreme court also refused to recognize a reimbursement
right under the equitable theories of quantum meruit and assumpsit. 


Consequently, after Frank's Casing, an insurer has a right of reimbursement
from its insured only if: (1) the policy specifically provides for reimbursement,
or (2) the insured clearly and unequivocally consents to the settlement and
the insurer's right to seek reimbursement. (31)


 Here, Pool's claim for reimbursement of the settlement funds against Abraxas was
based on its argument that the indemnity provision in the Agreement was void due to the
insolvency of Reliance. (32) The Nabors court rejected Pool's argument, finding that Pool
bore the risk of any loss associated with its underlying insurance obligations. (33) Thus, unlike
the issue in Frank's Casing and Matagorda County, Pool's claim was not seeking
reimbursement of settlement costs for an uncovered claim; rather, its claim was to
determine whether Reliance's insolvency altered its indemnity obligation--and the Nabors
court found it did not. (34) Moreover, the April 1 and April 9, 2002 letters demonstrate that the
parties agreed that Pool preserved the right to seek reimbursement for all or part of the
settlement funds. We reject Northfield's argument that by exercising a right that the parties
expressly agreed to, Pool "breached" its Agreement with Abraxas. 

 We are also unpersuaded by Northfield's argument that it is entitled to recover
Abraxas's attorneys' fees and its own attorneys' fees pursuant to the provision in the
Agreement that "[i]n the event one party must bring legal action in order to enforce an
indemnification, all such legal costs shall be included as part of the indemnification." Pool
argues that no "legal action" was required to "enforce an indemnification" because Pool
had already satisfied its indemnity obligation by paying $1 million toward the funding of the
settlement. Northfield's declaratory judgment action was in the nature of a defense: that
it did not owe Pool any reimbursement. (35) We decline to construe Northfield's declaratory
judgment action as an action to "enforce an indemnification" within the meaning of the
Agreement. We overrule Northfield's first issue. 

 We next address Northfield's claim that Abraxas's attorneys' fees are recoverable
under chapter 38 of the civil practice and remedies code (36) and under the DJA. (37) By its
second issue, Northfield claims it is entitled to recover its own attorneys' fees under the
DJA.

 Section 38.001(8) of the civil practice and remedies code permits an award of
attorney's fees for a suit based on a written contract. (38) However, "[t]o recover attorney's
fees under [section] 38.001, a party must (1) prevail on a cause of action for which
attorney's fees are recoverable, and (2) recover damages. . . ." (39) Attorneys' fees are in the
nature of costs, not damages. (40) Here, Abraxas asserted a breach of contract claim against
Pool in Pool's claim for reimbursement from Abraxas of the $1 million in settlement funds. 
The Nabors court held that Abraxas was not required to reimburse Pool. (41) Therefore,
Abraxas did not recover any "damages," and is therefore not entitled to attorneys' fees
under section 38.001. 

 Northfield also claims it is entitled to recover Abraxas's attorneys' fees under the
DJA. (42) In a declaratory judgment action, the decision to grant or deny attorneys' fees is
solely within the discretion of the trial court. (43) Pool argues that Northfield, as Abraxas's
assignee, is not entitled to attorneys' fees under chapter 37 because, among other
reasons, Northfield did not seek any declaratory relief against Pool in this proceeding. (44) 
In addition, Pool argues, Abraxas did not seek any declaratory relief against Pool in this
proceeding. (45) Pool contends that Northfield cannot "bootstrap" its request for declaratory
relief in the severed action because that action was concluded by final judgment. (46) We
agree with Pool that neither Northfield nor Abraxas asserted a request for declaratory relief
against Pool; accordingly, Northfield is neither entitled to recover its own attorneys' fees,
nor, as Abraxas's assignee, is it entitled to recover Abraxas's attorneys' fees under the
DJA. (47) We overrule both of Northfield's issues.

Conclusion 


 We affirm the trial court's order granting summary judgment in Pool's favor. 




 

 LINDA REYNA YAÑEZ,

 Justice





Memorandum Opinion delivered and filed 

this the 29th day of May, 2009.

 

 

 

 


 

 



 





 
1. Although this case is styled Nabors Corporate Services, Inc. f/k/a Pool Offshore Services, the parties
have stipulated that "Pool Company Texas Ltd." is substituted for "Nabors Corporate Services, Inc. f/k/a Pool
Offshore Services" in the record. We refer to appellee as "Pool."
2. Nabors Corporate Servs. v. Northfield Ins. Co., 132 S.W.3d 90 (Tex. App.-Houston [14th Dist.]
2004, no pet.). 
3. The Agreement also required, with respect to mutual indemnities, that each party name the other
as an additional insured and their respective insurers were to waive any rights of subrogation. 
4. Tex. Civ. Prac. & Rem. Code [Ann.] § 127.005 [(Vernon 2005)] (excluding from the purview of the
TOAIA mutual indemnity agreements providing that the parties agree to support the indemnity obligations with
insurance). 
5. Pool's policy with Reliance had a $ 1,000,000 primary liability limit. 
6. Specifically, as stated in the settlement agreement, the claim was settled on behalf of "Abraxas and
its insurers." 
7. Reliance was designated as an impaired insurer on October 5, 2001.
8. Abraxas filed counterclaims against Pool and also filed a separate lawsuit against Northfield. 
9. Northfield Ins. Co., 132 S.W.3d at 93-94 (internal footnotes as appear in original). 
10. Id. at 99.
11. See Tex. Civ. Prac. & Rem. Code Ann. §§ 33.011-.017 (Vernon 2008).
12. The record contains a settlement agreement between Northfield and Abraxas, whereby the parties
(1) dismiss all claims against each other, (2) Northfield pays Abraxas $97,500, and (3) Abraxas assigns any
claims it has against Pool to Northfield. Northfield seeks recovery of $283,782.99 in attorneys' fees incurred 
by Abraxas and recovery of its own attorneys' fees in the amount of $85,251.57. 
13. See Tex. R. Civ. P. 166a(c).
14. See Tex. R. Civ. P. 166a(c).
15. As summary judgment evidence, Northfield attached its settlement agreement with Abraxas. 
16. We note that in its August 1, 2005 motion for summary judgment, prior to its settlement with
Abraxas, Northfield reserved the right to contest the reasonableness of Abraxas's fees, stating that such fees
were "grossly exaggerated, and deal with numerous tasks that had nothing to do with defending the case
brought by Nabors/Pool against Abraxas." In its November 30, 2005 amended motion, Northfield also stated
that if its motion is granted, it will submit fee affidavits establishing the amount of its attorneys' fees. 
17. Joe v. Two Thirty Nine J. V., 145 S.W.3d 150, 156-57 (Tex. 2004); Branton v. Wood, 100 S.W.3d
645, 646 (Tex. App.-Corpus Christi 2003, no pet.). 
18. Dallas, Garland, & Ne. R.R. v. Hunt County, 195 S.W.3d 818, 820 (Tex. App.-Dallas 2006, no pet.). 
19. Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).
20. Coffey v. Singer Asset Fin. Co., 223 S.W.3d 559, 562-63 (Tex. App.-Dallas 2007, no pet.) (citing
Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995)). 
21. Browning v. Prostok, 165 S.W.3d 336, 344 (Tex. 2005) (citing Provident Life Ins. Co. v. Knott, 128
S.W.3d 211, 216 (Tex. 2003)); Coffey, 223 S.W.3d at 563. 
22. See Coffey, 223 S.W.3d at 562-63.
23. See Nabors, 132 S.W.3d at 99.
24. See Tex. Civ. Prac. & Rem. Code Ann. §§ 38.001-.006 (Vernon 2008).
25. See id. § 37.009 (Vernon 2008). 
26. See id.
27. We note that the record reference in Northfield's brief to the affidavit of John C. Tollefson refers
to an exhibit attached to Northfield's Response to Pool's Amended Motion for Summary Judgment; the
affidavit was not submitted in support of Northfield's amended motion for summary judgment. 
28. The record contains a letter dated April 1, 2002, from Pool's counsel to Abraxas's and Northfield's
counsel, stating that Pool will advance the $1 million to fund the settlement "subject to agreement by Abraxas
and its insurers, including but not limited to Northfield Insurance Company . . . that all rights, remedies, causes
of action, limitations, etc. are preserved by and between [Pool] and its related companies, insurers and/or re-insurers . . . . More specifically, of course, we are preserving all rights and remedies to seek reimbursement
of all or part of the settlement funds without prejudice to any arguments that Pool is not, and shall not be, liable
for any amount previously agreed upon by Abraxas and/or Reliance . . . ." A responsive letter dated April 9,
2002, to Pool's counsel acknowledges that Pool is advancing the $1 million, subject to the agreement that all
rights, remedies, causes of action, etc. are preserved by and between Abraxas, Northfield, and Pool. The
letter is signed by counsel and/or representatives of Abraxas and Northfield. 
29. See Excess Underwriters at Lloyd's London v. Frank's Casing Crew & Rental Tools, Inc., 246
S.W.3d 42, 46-48 (Tex. 2008) (op. on reh'g). 
30. Tex. Ass'n of Counties County Gov't Risk Mgmt. Pool v. Matagorda County, 52 S.W.3d 128 (Tex.
2000).
31. J. Price Collins, Ashley E. Frizzell, and Omar Galicia, Insurance Law, 61 SMU L. Rev. 877 (2008)
(internal citations omitted). 
32. See Nabors, 132 S.W.3d at 95.
33. See id. at 98.
34. See id.
35. See id. at 93. 
36. See Tex. Civ. Prac. & Rem. Code Ann. §§ 38.001-.006. 
37. See id. § 37.009.
38. See id. § 38.001(8).
39. Green Int'l , Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997); Alma Group, L.L.C. v. Palmer, 143
S.W.3d 840, 845-46 (Tex. App.-Corpus Christi 2004, pet. denied); see Mustang Pipeline Co. v. Driver Pipeline
Co., 134 S.W.3d 195, 201 (Tex. 2004). 
40. Alma Group, L.L.C., 143 S.W.3d at 846. 
41. See Nabors, 132 S.W.3d at 99. 
42. See id. § 37.009 ("In any proceeding under this chapter, the court may award costs and reasonable
and necessary attorneys' fees as are equitable and just.").
43. See id.
; Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist.
, 176 S.W.3d 746, 799 (Tex. 2005);
Wilson v. Chazanow, 105 S.W.3d 21, 26 (Tex. App.-Corpus Christi 2002, no pet.).
44. In Northfield's Third-Party Petition Against Pool, dated January 20, 2005, Northfield acknowledges
that its declaratory judgment action against Pool is "now final" (the Nabors case). It notes that Abraxas's claim
against Pool is a claim for attorneys' fees. Northfield's claim is a claim for indemnity or alternatively,
contribution, for any sums Northfield may be compelled to pay Abraxas. The petition does not seek any
declaratory relief. Similarly, Northfield's Amended Petition Against Pool, dated November 21, 2005, asserts
a claim for indemnity against Pool for any sums that Northfield paid to Abraxas. Although the amended
petition asserts that Northfield is entitled to recover its own attorneys' fees under chapters 37 and 38 of the
civil practice and remedies code, it does not request any declaratory relief. 
45. Abraxas's Alternative Cross-Claim Against Pool, dated May 18, 2005, seeks direct recovery from
Pool for any of Abraxas's claims against Northfield that are more properly asserted against Pool. The
pleading does not request any declaratory relief from Pool. In Abraxas's Amended Cross-Claim Against
Northfield, dated June 17, 2005, Abraxas sought declaratory relief against Northfield, seeking a declaration
as to coverage under its policy with Northfield. However, because all claims between Abraxas and Northfield
have been settled, Abraxas's amended cross-claim against Northfield is moot, and cannot support the award
of attorneys' fees. 
46. See Nabors, 132 S.W.3d at 100.
47. See McDowell v. McDowell, 143 S.W.3d 124, 131 (Tex. App.-San Antonio 2004, pet. denied)
(reversing award of attorneys' fees to appellee where appellee had not requested declaratory judgment).