The **UNIVERSITY OF TEXAS MEDI-CAL BRANCH AT GALVESTON,** Appellant,

v.

**Rae Paul ALLAN, Appellee.**

**No. C14–88–102–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 24, 1989.

Manuel Rios, Austin, for appellant.

Leslie Dean Guhl, Galveston, Susan E. Roehm, Houston, for appellee.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, the University of Texas Medical Branch at Galveston, appeals a summary judgment in favor of appellee, Rae Paul Allan. We reverse and remand.

On March 7, 1984, appellee was treated and hospitalized for gender reassignment. Appellee executed an assignment of her interest in insurance benefits in favor of appellant on the same date. The insurer, Aetna Life Insurance Company, initially paid the claim directly to appellant but subsequently asked for return of the monies, claiming a dispute as to the "necessity" of such surgery or treatment. Appellant returned the monies and sought to recover from appellee. Appellee also did not pay. Appellee, however, filed suit against her insurer on September 4, 1984 seeking recovery of the benefits. During the pendency of this suit, appellee filed for protection under the bankruptcy statutes.[1] On May 29, 1985, appellee was released from all dischargeable debts, including the debt to appellant.

In April 1986, appellee and Aetna reached an agreement whereby Aetna would pay $10,000 towards settlement of the suit. Appellant intervened seeking entitlement to those proceeds before the dismissal of appellee's suit. Consequently, Aetna interpled the settlement proceeds and requested a resolution of the parties' conflicting claims. Both appellant and appellee moved for summary judgment. On September 21, 1987, the trial court granted appellee's motion to which appellant now appeals.

Appellant does not challenge the trial court's failure to grant its motion for summary judgment. See e.g., The Atrium v. Kenwin Shops, 666 S.W.2d 315 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Appellant, instead, by five points of error, challenges the trial court's grant of summary judgment in favor of appellee. On appeal, the standards for reviewing a motion for summary judgment are as follows:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue, precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor.

Nixon v. Mr. Property Management, 690 S.W.2d 546 (Tex.1985); City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671 (Tex.1979).

In point of error one, appellant contends the court erred in granting appellee's motion for summary judgment because her assignment transferred to appellant the exclusive right to collect the insurance proceeds.

■ The word "assignment" has a comprehensive meaning and in its most general sense means the transfer or setting over of property, or some right or interest, e.g. a chose, from one person to another. 6A C.J.S., Assignments § 2 p. 590 (1975). See also, Pape Equipment. Co. v. I.C.S., Inc., 737 S.W.2d 397, 399

1. Although not stated by the parties, the record reveals appellee's voluntary chapter 7 petition was filemarked on December 18, 1984.

(Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). An assignment is a contract between the assignor and assignee, and operates by way of agreement or contract. *Id.* at § 4; 6 Am.Jur.2d, *Assignments* § 82 (1963). As a general rule, in order to be assignable, an estate or interest in property must have an actual or potential existence. However, it is not essential, to make an equitable assignment applicable, that the property or fund be in existence at the time the contract is made; it is sufficient that it exists potentially and is in existence during the time within which the assignment may operate. 6A C.J.S. *Assignments* at § 14, p. 606; 6 Am.Jur.2d *Assignments* § 16 pp. 200–201. *See also,* RESTATEMENT (SECOND) OF CONTRACTS § 320 (1981). The assignor, after an unqualified assignment and notice to the obligor, generally loses all control over the chose and can do nothing to defeat the rights of the assignee. 6A C.J.S. *Assignments* at § 85, p. 734; 6 Am.Jur.2d *Assignments* § 112 pp. 294–295.

 It is undisputed that appellant fully performed its obligations, for which the assignment was given, and notice of such assignment was given to Aetna. As such, the assignment was irrevocable and appellee did not have the authority to prejudice or defeat appellant's rights under the assignment. *See e.g.,* RESTATEMENT (SECOND) OF CONTRACTS § 332(5) (1981); 6A C.J.S. *Assignments* § 85 p. 734 (1975). Appellee does not contend that the assignment was invalid at the time it was given. Appellee urges, however, that appellant's subsequent pursuit of appellee for recovery, along with evidence of appellant's failure to sue Aetna for such proceeds, raises the issue of waiver. Generally speaking, an assignor, after making a valid assignment, cannot urge estoppel or waiver against his assignee. 6A C.J.S. *Assignments* § 100, p. 759. Moreover, a party to a contract cannot relieve himself of his obligations thereunder by merely assigning the contract to a third party. 6 Am.Jur.2d

*Assignments* § 10, p. 293; 6A C.J.S., *Assignments* § 96, 97. Pursuant to the terms of the parties' assignment, appellee acknowledged that she was not released from her standby duty to pay. Consequently, that appellant sought recovery from appellee instead of Aetna does not establish waiver or estoppel.

 Further, that appellant has not and did not sue Aetna for the proceeds does not establish waiver. It was appellant's prerogative whether or not to sit on its rights or to pursue litigation, but the failure of appellant to do so did not give appellee the right to interfere. 6A C.J.S. *Assignments* § 90 p. 744. Appellee, having done so, holds the proceeds in constructive trust on behalf of appellant. 6A C.J.S. *Assignments* § 106 p. 766. Point of error one is sustained.

In point of error two, appellant contends the anticipated proceeds were not a part of the bankruptcy estate and thus, the bankruptcy decree did not discharge the assignment.

 In the case of *In re Moskowitz,* 14 B.R. 677 (Bankr.S.D.N.Y.1981), the New York bankruptcy court had to determine whether a prepetition payment of proceeds paid directly to a hospital within 90 days of petition was property of the bankruptcy estate. Pursuant to section 547 of the Bankruptcy Code, payments received by a creditor within the preference period may be avoided by the bankruptcy trustee and recovered as property of the estate. 11 U.S.C.A. §§ 541(a)(1), 547. However, in *Moskowitz,* there was ample evidence of the debtor's assignment of the proceeds in favor of the hospital and such payment was deemed not to be property of the estate. Here, there is no showing by either party that the parties' assignment was made known to the bankruptcy judge or the trustee.[2] Bankruptcy Rule 1007(h). Nor, as appellee contends, is there record proof that such assignment was avoided, other

2. In number 6 of her Statement of Financial Affairs, appellee denied holding property for another person. In number 12(b) of same, appellee denied having made a transfer of any real or personal property during the year preceding the filing of her petition. It should also be noted that appellee did not initially list the claim against Aetna nor claim such anticipated property as exempt until April 23, 1985 by an amended schedule.

than by the use of § 522(d)(5).[3] The assignment was not an assignment of appellee's wages, which is generally disallowed after the discharge of a debtor. The assignment was based upon appellee's interest in money to be paid under an insurance contract.

■ However, because appellant had not been paid by the time of appellee's bankruptcy petition, appellee retained the legal as opposed to the equitable title to the anticipated proceeds. 6 Am.Jur.2d *Assignments* §§ 127–134. Pursuant to § 541(a)(1) of the Bankruptcy Code, such legal interest was property of the bankruptcy estate.[4] 11 U.S.C.A. § 541(a) (West 1979 & West Supp.1989). However, the interest being limited in the hands of appellee, it was equally limited in the hands of the trustee. In this instance, the anticipated recovery of such proceeds would be a part of the bankruptcy estate, subject to a constructive trust.[5] Point of error two is sustained.

In point of error three, appellant argues the bankruptcy order of discharge did not nullify appellee's assignment of insurance proceeds to appellant.

■ The filing of the petition on bankruptcy does not give a debtor interests in property not otherwise owned. D. Cowans, *Bankruptcy Law & Practice*, § 9.7 (1987). That appellee's debt to appellant was discharged does not extinguish appellant's right to collect from Aetna. 6A C.J.S. *Assignments* at § 89, § 106. Appellee's discharge under 11 U.S.C.A. § 727 merely prevented appellant from exercising its right to recover against appellee for the underlying debt. Such discharge, however, did not avoid appellant's equitable interest in the proceeds. *In re Smiley*, 26 B.R. 680 (Bankr.D.Kan., 1982); 11 U.S.C.A. § 524(e) (West 1979). Point of error three is sustained.

In point of error four, appellant argues that appellee's claim to the insurance proceeds as exempt property under § 522(d)(5) of the Bankruptcy Code was improper.

■ In the case of *In re Starns*, 52 B.R. 405 (Bankr.S.D.Tex.1985), the court discussed the necessity of compliance with Bankruptcy Rule 4003. If a creditor fails to timely object to a debtor's claimed exemptions, the property claimed thereunder is deemed exempt. *Starns*, 52 B.R. at 409. However, the facts in *Starns* dealt with the anticipated effect of foreclosing a judicial lien upon non designated excess of a previously existing homestead. Here, the proceeds at all times nominally belonged to appellee.[6] Nonetheless, appellee claimed the exemption and the exemption apparently allowed, combined with appellant's perceived failure to object to such claimed exemption, a fact issue is raised as to ap-

---

3. There is no evidence of any adversary proceeding by the trustee (or any authority upon which the trustee could avoid the assignment) and there is no evidence of appellee's use of (or capability to use) § 522(f). See e.g., *In re DeSimone*, 13 B.R. 981 (Bankr.E.D.Pa.1981); Bankruptcy Rule 4003(d). See and compare, *In re Giles*, 9 B.R. 135 (Bankr.E.D.Tenn.1981). It should be noted that no requirement exists regarding a public filing by an assignee for monies due, in contradistinction with a judicial lien or a security interest. All that was necessary to preserve appellant's interest was notice to the obligor, Aetna. 6 Am.Jur.2d Assignments §§ 95, 96.

4. Pursuant to § 541(a)(1): The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located: "except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of

the debtor in property as the commencement of the case."

5. The Notes of Committee on the Judiciary, Senate Report No. 95–989, contained within the Historical and Revision Notes to § 541 states: Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment would actually be held in constructive trust for the person to whom the bill was owed. This type of situation was not present in Moskowitz but is more applicable to the instant case.

6. See e.g., Restatement of Restitution § 160 (1937). See also *Smith v. Green*, 243 S.W. 1006 (Tex.Civ.App.—Amarillo 1922, writ ref'd); *First State Bank of Ellinger v. Zelesky*, 262 S.W. 190 (Tex.Civ.App.—Galveston 1924, no writ).

pellant's possible waiver of full recovery of the proceeds.[7] Point of error four is sustained, but in the analysis of this point it is shown that appellant's entitlement to full recovery is questioned.

In point of error five, appellant claims the award to appellee of the insurance proceeds would constitute unjust enrichment.

It is well settled that "issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal." TEX.R.CIV.P. 166a(c). The issue of unjust enrichment was not presented to the court below. However, our disposition of the previous points of error makes it quite clear that appellee's possession of the proceeds is under the guise of a constructive trust. The Restatement defines the circumstances which creates a constructive trust. Pursuant to § 160 of the Restatement:

Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that would be *unjustly enriched* if he were permitted to retain it, a constructive trust arises. (emphasis added).

Consequently, equity acknowledges the assignment's validity and imposes the constructive trust *on the basis of unjust enrichment.* Point of error five is sustained.

▌ Appellee brings forward one cross point regarding the award of attorney's fees. This point need not be addressed. When a summary judgment is reversed, the parties are not limited to the theories asserted in their original summary judgments at a subsequent trial on the merits. *Hudson v. Wakefield,* 711 S.W.2d 628 (Tex. 1986).

The judgment of the trial court is reversed and the cause remanded.

**7.** Section 522(d)(5), also known as the "wild card" exemption allows the debtor to exempt any, as opposed to specific, property. See *In re Patterson,* 825 F.2d 1140 (7th Cir.1987). Pursuant to section 522(d), a debtor may exempt up to $400, plus up to $3,750 in an unused exemption under 522(d)(1). Even if appellee did not utilize the "wild card" to the fullest extent, the parties are in dispute as to whether appellant is entitled to recover $7,846.15 or $6,276.92.