**Affirmed and Opinion filed January 29, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-01133-CV

## MARHABA PARTNERS LIMITED PARTNERSHIP, Appellant

## V.

## KINDRON HOLDINGS, LLC, Appellee

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-52650**

## O P I N I O N

Marhaba Partners Limited Partnership appeals from the trial court's orders granting summary judgment in favor of Kindron Holdings, LLC on Kindron's declaratory judgment claim, and on Marhaba's counterclaims for declaratory judgment, usury, breach of contract, conversion, and common law unfair debt collection. We affirm.

## BACKGROUND

Marhaba planned to develop a large tract of land in Harris County in 2007. Marhaba agreed with Harris County Municipal Utility District No. 402 to construct water and sewer lines, waste water treatment facilities, streets, and electrical systems in connection with the development. In return, the District agreed that Marhaba would receive proceeds from a District bond sale. We refer to the bond proceeds as the "MUD 402 Receivables" or the "Receivables."

Marhaba obtained a loan from City Bank to finance development in 2007. Marhaba executed a document entitled "Assignment of Right to Reimbursement," which secured the loan with the MUD 402 Receivables. City Bank also secured the loan with a lien on the property.[1]

When Marhaba and City Bank refinanced the loan in 2009, Marhaba executed three promissory notes evidencing a total debt of $9,584,357.93. The parties also executed a document entitled "Assignment of Bond Proceeds," which affirmed City Bank's security interest in the MUD 402 Receivables. Marhaba and City Bank additionally executed a deed of trust, which secured the loan with the property, and a document entitled "Credit Agreement," which set out the refinancing's terms and conditions.[2]

Marhaba defaulted on its City Bank loan. On May 3, 2011, City Bank sold the property at a foreclosure sale and purchased the property with a credit bid of $7,140,000. According to City Bank's records, the foreclosure sale proceeds did not extinguish Marhaba's debt.

---

[1] Additionally, City Bank secured the loan with a lien on Marhaba's 25 percent interest in a limited partnership. Marhaba does not contest this lien or the sale of this collateral on appeal.

[2] City Bank also secured the refinanced loan with a lien on Marhaba's 25 percent interest in a limited partnership. Marhaba does not contest this lien or the sale of this collateral on appeal.

City Bank sold its interest in the loan to Kindron on December 29, 2011, and assigned to Kindron the three promissory notes executed at the refinancing. City Bank also assigned to Kindron all related financing agreements, including the Assignment of Right to Reimbursement, the Assignment of Bond Proceeds, and the Credit Agreement. According to City Bank's records, Marhaba owed $1,341,386.71 on the loan when the assignment occurred.

Kindron notified Marhaba on April 4, 2012, of its intent to conduct a sale of the MUD 402 Receivables pursuant to Texas Business and Commerce Code section 9.610.[3] The notice stated that Kindron would apply proceeds from the sale to a remaining indebtedness of $2,056,846.19.

Marhaba disputed Kindron's right to sell the MUD 402 Receivables. In a letter dated April 21, 2012, Marhaba stated: "[P]lease be advised that the [c]ollateral described in this notice was a contingent assignment pledged only to secure the payment of certain indebtedness. That indebtedness has now been fully satisfied, and no deficiency has been established. Therefore[,] no assignment of the described interest has occurred, and the [c]ollateral that [Kindron] purports to sell has no value."

Kindron sold the MUD 402 Receivables on April 23, 2012, and purchased the Receivables with a credit bid of $300,000.[4] Kindron filed suit against Marhaba on September 11, 2012; Kindron requested a declaration that it was entitled to foreclose on the MUD 402 Receivables and that it is the current owner and holder

---

[3] Kindron also notified Marhaba of its intent to sell Marhaba's 25 percent interest in a limited partnership. Kindron purportedly sold and purchased the partnership interest on April 23, 2012. Marhaba does not contest Kindron's sale or purchase of the partnership interest on appeal.

[4] The record reflects that Kindron paid $300,000 for all collateral purchased at the sale, including the MUD 402 Receivables and Marhaba's 25 percent interest in a limited partnership.

3

of the Receivables.[5]

Marhaba denied Kindron's allegations and filed counterclaims for declaratory judgment, usury, breach of contract, conversion, and common law unfair debt collection. Marhaba sought a declaration that Kindron was not entitled to foreclose on the MUD 402 Receivables, and that Marhaba is the current owner and holder of the Receivables. Marhaba predicated its claims for usury, breach of contract, conversion, and common law unfair debt collection on an assertion that Kindron had no right to foreclose on the MUD 402 Receivables.

Kindron filed traditional motions for summary judgment on its declaratory judgment claim and on Marhaba's counterclaims. Marhaba filed exhibits in response through which Marhaba attempted to establish the property's fair market value and the value of the MUD 402 Receivables. The trial court struck the exhibits upon Kindron's motion, and granted summary judgment in Kindron's favor on (1) Kindron's claim for declaratory judgment; and (2) Marhaba's counterclaims. The trial court signed a final judgment on November 25, 2013, in which it declared that Kindron (1) obtained a valid and enforceable security interest in the MUD 402 Receivables; (2) was entitled to foreclose on the Receivables; and (3) is the current owner and holder of the Receivables. The trial court ordered that Marhaba take nothing on its counterclaims. Marhaba timely appealed.

## ANALYSIS

Marhaba raises two issues on appeal contending that the trial court erred in

---

[5] Kindron stated at oral argument that it requested a declaratory judgment because the District refused to acknowledge Kindron's purchase of the MUD 402 Receivables. The District is not a party to this case; therefore, its rights are not prejudiced by the trial court's declaration in favor of Kindron. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.006 (Vernon 2008) ("A declaration does not prejudice the rights of a person not a party to the proceeding.").

4

granting summary judgment in Kindron's favor. Marhaba also contends that the trial court erroneously struck Marhaba's summary judgment evidence. We address Marhaba's issues in turn. We discuss the trial court's ruling to strike evidence related to the property's fair market value as part of issue one, and we discuss the trial court's ruling to strike evidence related to the value of the MUD 402 Receivables as part of issue two.

## I.      Standard of Review

Summary judgment is proper under Rule 166a(c) when the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005). A plaintiff who moves for traditional summary judgment bears the burden of conclusively proving all elements of its claim as a matter of law. *See* Tex. R. Civ. P. 166a(c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). A defendant who moves for summary judgment has the burden of conclusively negating at least one element of the plaintiff's cause of action or conclusively establishing an affirmative defense. *See Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

Once the movant produces evidence establishing its entitlement to summary judgment, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). To determine if the nonmovant has raised a genuine issue of fact, we

review the evidence in the light most favorable to the nonmovant by crediting favorable evidence if reasonable jurors could do so and disregarding contrary evidence unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

We review the trial court's grant of summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Where a summary judgment fails to specify the grounds upon which the trial court relied for its ruling, we must affirm the judgment if any of the grounds advanced is meritorious. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). "In considering grounds for reversal, we are limited to those grounds expressly set forth in the summary-judgment motions, answers, or other responses, and may not rely on the appellate briefs or summary-judgment evidence." *Fleming v. Curry*, 412 S.W.3d 723, 731 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *see* Tex. R. Civ. P. 199a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993). We review a trial court's decision to admit or exclude summary judgment evidence for an abuse of discretion. *Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 667 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

## II.    Kindron's Declaratory Judgment Claim

Marhaba contends that the trial court erred in granting summary judgment in Kindron's favor on Kindron's declaratory judgment claim because a fact issue exists regarding the property's fair market value at the time of the foreclosure sale. Marhaba argues that the property's fair market value is relevant to Kindron's claim because Kindron seeks to recover a deficiency within the meaning of Texas Property Code section 51.003. Marhaba further asserts that it filed summary

6

judgment evidence relevant to the property's fair market value, and that the trial court erred by striking this evidence. Kindron contends that section 51.003 does not apply to its claim and the property's fair market value is irrelevant.

## A.    Applicability of Texas Property Code Section 51.003

Section 51.003 provides borrowers and guarantors with a mechanism to adjust foreclosure sales prices upward. *See* Tex. Prop. Code § 51.003 (Vernon 2014); *see generally Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 5 (Tex. 2014). The legislature created this mechanism in recognition that post-foreclosure deficiencies artificially can be inflated because "the nonjudicial foreclosure sale often does not directly represent what a buyer might pay in the market." *Moayedi*, 438 S.W.3d at 5. When the lender is the sole bidder, it has little incentive to bid high. *See id.*

Section 51.003 states, in pertinent part:

(a) If the price at which real property is sold at a foreclosure sale under Section 51.002 is less than the unpaid balance of the indebtedness secured by the real property, resulting in a deficiency, any action brought to recover the deficiency must be brought within two years of the foreclosure sale and is governed by this section.

(b) Any person against whom such a recovery is sought by motion may request that the court in which the action is pending determine the fair market value of the real property as of the date of the foreclosure sale.

(c) If the court determines that the fair market value is greater than the sale price of the real property at the foreclosure sale, the persons against whom recovery of the deficiency is sought are entitled to an offset against the deficiency in the amount by which the fair market value, less the amount of any claim, indebtedness, or obligation of any kind that is secured by a lien or encumbrance on the real property that

was not extinguished by the foreclosure, exceeds the sale price.[6]

Section 51.003 applies to "any action brought to recover the deficiency." Tex. Prop. Code § 51.003(a).

Marhaba argues that section 51.003(a) applies here because Kindron's declaratory judgment is an "action brought to recover the deficiency." Marhaba argues that a deficiency resulted from the property foreclosure sale because the sale proceeds did not fully pay the loan balance. Marhaba further asserts that, because a deficiency resulted, section 51.003 applies to Kindron's subsequent suit to collect the deficiency via the declaratory judgment action.

Kindron counters that its suit falls outside of section 51.003's reach because Kindron sought only a declaration regarding its rights to the MUD 402 Receivables. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.001-.011 (Vernon 2008). Kindron asserts that the trial court's judgment merely confirms what already has been accomplished — Kindron's non-judicial foreclosure and purchase

---

[6] The supreme court provided an example of how the statute works when a single piece of real estate collateral is involved:

> As an example, imagine a debtor owes $100,000 secured by a piece of property. At the foreclosure sale the property is sold for $60,000. The resulting debt is the amount owed minus the proceeds from the foreclosure sale. That amount is affected by the costs associated with foreclosure, but for simplicity's sake, we will ignore those variables. Here, the resulting deficiency would be $100,000 minus $60,000, or $40,000.

> If section 51.003 applies, the court can hear evidence regarding what the fair market value of the property was at the time of the foreclosure sale. If the fair market value exceeded the foreclosure sale price, the court shall offset the deficiency by that difference. Using our example, let us assume that the fair market value of the property at the time of foreclosure is $75,000. Because the fair market value, $75,000, exceeds the foreclosure sale price, $60,000, the deficiency judgment can be reduced by the difference between those amounts, that is, by $15,000. The resulting amount owed is $40,000 (the deficiency) minus $15,000, or $25,000.

*Moayedi*, 438 S.W.3d at 5-6.

8

of the MUD 402 Receivables. Kindron asserts that it does not seek to impose personal liability on Marhaba for any alleged deficiency on the loan; therefore, according to Kindron, its action falls outside section 51.003.

As a starting point, we note that Marhaba did not attempt to enjoin the sale of the MUD 402 Receivables before the April 23, 2012 foreclosure sale. If Marhaba had attempted to do so, it could not have enjoined the sale pursuant to section 51.003 because the non-judicial sale was not an "action" within the meaning of section 51.003.

Section 51.003 provides an affirmative defense to offset any deficiency owed after a real estate foreclosure. *Moayedi*, 438 S.W.3d at 2, 6. It presupposes a court action in which the affirmative defense may be asserted. *See* Tex. Prop. Code. Ann, § 51.003(b) ("Any person . . . may request that the court in which the action is pending determine the fair market value of the real property."). Kindron's April 23, 2012 sale did not require a court action; therefore, Marhaba could not have asserted the section 51.003 affirmative defense to enjoin the sale. *See Moayedi*, 438 S.W.3d at 2, 6; *see also Branch Banking & Trust Co. v. TCI Luna Ventures, LLC*, No. 05-12-00653-CV, 2013 WL 1456651, at *5 (Tex. App.— Dallas Apr. 9, 2013, no pet.) (op. on reh'g) (Section 51.003 does not provide a cause of action to enjoin a non-judicial real estate foreclosure sale.).

Marhaba asserted section 51.003 as an affirmative defense in Kindron's declaratory judgment action to confirm the April 23, 2012 foreclosure sale of the Receivables. *See* Tex. Prop. Code Ann. § 51.003(a). Kindron argues that, even if section 51.003 could apply to Marhaba's indirect challenge to the non-judicial foreclosure sale of the Receivables, the sale — and, therefore, the subsequent legal action to confirm the sale itself — was not an "action brought to recover the deficiency." Instead, Kindron contends the sale was an action to foreclose on

additional collateral.

The Property Code does not define the term "deficiency." Section 51.003 does not explicitly address how courts should address deficiencies when multiple sources of collateral secure the same loan. The statute does not state whether the existence of a "deficiency" within the meaning of section 51.003 should be determined after each foreclosure sale or after all sales. Additionally, the statute does not state whether section 51.003 applies to situations involving mixed collateral encompassing real estate and personal property.[7]

When a loan is secured by a single piece of real estate collateral, a deficiency judgment will impose personal liability upon the debtor for the unpaid amount of a debt after the foreclosure sale. *See, e.g.*, *Moore v. Bank Midwest, N.A.*, 39 S.W.3d 395, 403 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (debtor personally liable for deficiency remaining after the foreclosure sale of a single piece of real estate collateral). The deficiency judgment is based on "the amount of the note, interest and attorney's fees, less the amount received at the trustee sale and other legitimate credits." *Moayedi*, 438 S.W.3d at 4 (citing *Maupin v. Chaney*, 139 Tex. 426, 163 S.W.2d 380 (1942)). Additionally, a lender in this circumstance must obtain a judgment to collect any deficiency that remains after the foreclosure sale; there is no mechanism available for the lender to collect the deficiency through non-judicial means. *See e.g.*, *Moore*, 39 S.W.3d at 403. The lender files its deficiency judgment action in court, and the debtor may assert

---

[7] In cases involving collateralization by real estate and personal property, a lender can choose to apply personal property foreclosure rules to personal property collateral and real property foreclosure rules to real property collateral. *See* Tex. Bus. & Com. Code Ann. § 9.604(a) (Vernon 2011); *see Van Brunt v. BancTexas Quorum, N.A.*, 804 S.W.2d 117, 127 (Tex. App.—Dallas 1990, no writ) (en banc) (op. on reh'g) (applying the prior version of Texas Business and Commerce Code section 9.604(a) and allowing a lender to seek a deficiency judgment after first foreclosing on personal property and then foreclosing on real property collateral).

the section 51.003 affirmative defense to reduce the amount of the deficiency by an offset. *See* Tex. Prop. Code Ann. § 51.003; *Moayedi*, 438 S.W.3d at 3.

In cases involving multiple sources of collateral, personal liability may not be at issue; the lender may be able to collect through a series of non-judicial foreclosure sales. *See Branch Banking & Trust Co.*, 2013 WL 1456651, at *5 (loan secured by 12 properties; section 51.003 could not be asserted to enjoin the sixth non-judicial foreclosure sale based on the argument that the lender should have credited the fair market values of the first five foreclosed properties before proceeding with the sixth sale); *Comiskey v. FH Partners, LLC*, 373 S.W.3d 620, 643 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (loan secured by two properties; section 51.003 did not require lender to credit the fair market value of the first foreclosed property before foreclosing on the second property, which, at the time of the second foreclosure sale, was owned by persons who were not debtors on the loan). In cases where multiple pieces of collateral are foreclosed upon in a series of non-judicial proceedings, the foreclosure sale price for each piece of collateral — not the collateral's fair market value — is applied to the loan balance after each sale. *See Branch Banking & Trust Co.*, 2013 WL 1456651, at *5; *Comiskey*, 373 S.W.3d at 643. Moreover, section 51.003 does not apply to prevent the sales or to require the lender to offset the debt in the manner stated in section 51.003 before proceeding with additional sales. *See Branch Banking & Trust Co.*, 2013 WL 1456651, at *5; *Comiskey*, 373 S.W.3d at 643.

The inapplicability of the fair market value offset mechanism in cases involving serial foreclosure on multiple sources of collateral suggests that a "deficiency" under section 51.003 should be calculated (1) after all collateral has been sold; or (2) when the lender seeks to impose personal liability against the debtor through judicial action. *See Branch Banking & Trust Co.*, 2013 WL

11

1456651, at *5; *Comiskey*, 373 S.W.3d at 643; *see also Van Brunt v. BancTexas Quorum, N.A.*, 804 S.W.2d 117, 131 (Tex. App.—Dallas 1990, no writ) (en banc) (op. on reh'g) (Baker, J., dissenting) ("Foreclosing on [additional] real property is not the seeking of a deficiency.").

To support its contention that a "deficiency" under section 51.003 always should be calculated immediately after a real property foreclosure sale, Marhaba relies upon Texas cases involving only a single piece of real estate collateral. *See Vill. Place, Ltd. v. VP Shopping, LLC*, 404 S.W.3d 115, 131 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (rejecting lender's artful pleading and determining that an action to impose personal liability on a debtor following the foreclosure sale of a single piece of real estate collateral was an action brought to recover a deficiency within the meaning of section 51.003); *Martin v. PlainsCapital Bank*, 402 S.W.3d 805, 811 (Tex. App.—Dallas 2013, pet. granted) (determining that section 51.003 applied to a deficiency judgment action following the foreclosure sale of a single piece of real estate collateral even though the lender sought to calculate the deficiency based on a post-foreclosure resale price, rather than the foreclosure sale price).

Marhaba misplaces its reliance on these cases because the debt at issue here is secured by multiple pieces of mixed collateral that were foreclosed upon in a series of non-judicial proceedings. Additionally, Kindron does not seek to impose personal liability on Marhaba; it seeks to confirm the non-judicial foreclosure sale of the MUD 402 Receivables.

We conclude that Kindron's declaratory judgment action to confirm the non-judicial foreclosure sale of the MUD 402 Receivables, which came after the non-judicial foreclosure sale of the property, is not an "action brought to recover the deficiency" within the meaning of section 51.003.

**B.    Marhaba's Summary Judgment Evidence Regarding the Property's Fair Market Value**

Marhaba filed summary judgment evidence regarding the property's fair market value at the time of its foreclosure sale. The trial court struck this evidence without stating its reasons.[8] We review a trial court's decision to admit or exclude summary judgment evidence for an abuse of discretion. *Pipkin*, 383 S.W.3d at 667. A trial court abuses its discretion when it acts without reference to any guiding rules or principles, or if it acts arbitrarily or unreasonably. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex. 1985). "Evidence which is not relevant is inadmissible." Tex. R. Evid. 402.

Marhaba argues that evidence of the property's fair market value is relevant because section 51.003 applies to Kindron's claim. Having held that section 51.003 does not apply to Kindron's claim, we conclude that the trial court did not abuse its discretion by excluding evidence of the property's fair market value.[9]

We conclude that the trial court did not err in granting summary judgment in Kindron's favor on its claim for declaratory judgment. We overrule Marhaba's first issue.

---

[8] Marhaba argues that Kindron waived its evidentiary objections by obtaining a ruling on its objections one month after the hearing. The record shows that the trial court ruled on Kindron's objections after the hearing on the same day that it signed its first summary judgment order. We determine that Kindron did not waive its evidentiary objections. *See Dolcefino v. Randolph*, 19 S.W.3d 906, 926 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (When a trial court takes a motion for summary judgment under advisement, a party does not waive its evidentiary objections if the trial court also takes the evidentiary objections under advisement and rules on the objections at, before, or very near the time the trial court rules on the motion for summary judgment).

[9] Marhaba also argues that evidence of the property's fair market value is relevant to its counterclaims because section 51.003 applies to those claims; we likewise reject the argument that section 51.003 applies to those claims.

## II.    Marhaba's Counterclaims

Marhaba argues in its second issue that the trial court erred in granting summary judgment in Kindron's favor on Marhaba's counterclaims for declaratory judgment, usury, breach of contract, conversion, and common law unfair debt collection. It argues that Kindron was not entitled to summary judgment as a matter of law because (1) section 51.003 applies to Marhaba's counterclaims; (2) Marhaba's contractual release of its usury claim is invalid; and (3) the MUD 402 Receivables were not collateral for the loan.

We first consider whether section 51.003 applies to Marhaba's counterclaims. We next consider whether the MUD 402 Receivables were collateral for the loan. In discussing this issue, we also consider whether the trial court erred in striking evidence related to the value of the MUD 402 Receivables. Lastly, we turn to Marhaba's argument that the contractual release of its usury claim is invalid.

### A.    Section 51.003 Does Not Apply to Marhaba's Counterclaims

Marhaba's counterclaims are based on the premise that Kindron was not entitled to foreclose on the MUD 402 Receivables because section 51.003 required Kindron to credit the property's fair market value before foreclosing on the Receivables. Marhaba asserts that section 51.003 applies to its counterclaims for the same reason that it applies to Kindron's declaratory judgment action.

We have determined that section 51.003 does not apply to Kindron's declaratory judgment action, and that section 51.003 did not require Kindron to credit the property's fair market value before foreclosing on the MUD 402 Receivables. Therefore, we also reject Marhaba's argument that section 51.003 applies to its counterclaims.

14

## B.    The MUD 402 Receivables Secured the Loan

Marhaba argues that an ambiguity exists regarding whether (1) the MUD 402 Receivables secured the loan; or (2) Marhaba and City Bank merely intended to create "a 'direct pay' mechanism to apply the MUD 402 Receivables (if necessary), as they were received by Marhaba, to pay down any unpaid principal and interest on [the loan]." Marhaba asserts that summary judgment on its counterclaims is improper if the MUD 402 Receivables did not secure the loan.[10]

Kindron tacitly concedes that summary judgment was improper if the Receivables did not secure the loan. Kindron argues instead that the MUD 402 Receivables secured the loan as conclusively established in the summary judgment record.[11]

---

[10] Marhaba's interpretation of the MUD 402 Receivables has evolved over the course of this dispute. In its letter dated April 21, 2012, contesting Kindron's right to sell the MUD 402 Receivables, Marhaba asserted: "[P]lease be advised that the [c]ollateral described in this notice was a contingent assignment pledged only to secure the payment of certain indebtedness. That indebtedness has now been fully satisfied, and no deficiency has been established. Therefore[,] no assignment of the described interest has occurred, and the [c]ollateral that [Kindron] purports to sell has no value."

[11] It is undisputed on appeal that the MUD 402 Receivables are personal property rather than real property. We assume, for purposes of this review only, that this form of personal property can be sold or assigned as collateral to secure a debt. We make this assumption because the parties have not addressed whether a lien can attach to the right to receive municipal bond proceeds, or whether such proceeds can be sold. *See San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 209-10 (Tex. 1990) (a court of appeals may not reverse summary judgment on grounds neither raised in opposition to the motion at the trial level, nor presented to the court of appeals by brief or argument). There is room for discussion about whether a developer may sell or assign as security the right to receive municipal bond proceeds. *Compare Cameron Cnty. Sav. Ass'n v. Cornett Constr. Co.*, 712 S.W.2d 580, 583 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.) ("At the outset, it is important to properly characterize the funds involved; the funds are proceeds from a municipal utility district bond sale earmarked for paying construction improvements. Regardless of what they are called, the purpose of the funds was to pay construction costs, and not as assignable assets to secure other debts.") *with S. Sur. Co. of New York v. First State Bank of Marquez*, 54 S.W.2d 888, 891 (Tex. Civ. App.—Waco 1932, writ ref'd) (allowing bank to perfect materialmen's lien on state highway department funds after a subcontractor assigned his right to receive the funds to the bank to secure a loan); *see also J.W.D., Inc. v. Fed. Ins. Co.*, 806 S.W.2d 327, 331 (Tex. App.—Austin 1991, no writ) (applying

The loan documents recite Marhaba's and City Bank's intent that the Receivables would serve as security for the loan. The 2007 Assignment of Right to Reimbursement states: "[Marhaba] hereby grants to [City Bank] a security interest in [the] agreement with the District and all its proceeds to secure the [loan]. . . . All sums owing for reimbursement from the District shall be paid to [City Bank], to be applied against the [loan]." The 2009 Assignment of Bond Proceeds states: "Except as expressly modified and superceded [*sic*] by this Agreement, the Assignment of Right to Reimbursement . . . is ratified and confirmed and continues in full force and effect." The Assignment of Bond Proceeds states: "Marhaba will prepare, execute, and forward all such additional documents and other instruments as may reasonably be required in order to have the [MUD 402 Receivables] paid directly to City Bank and will execute and deliver all such additional assignments and instruments as might reasonably be required or necessary to vest title to the [MUD 402 Receivables] in City Bank, and so that the same will be paid directly to City Bank." The Assignment of Bond Proceeds makes clear that the assignment serves only as collateral for the loan. It states: "Marhaba wishes to provide for the repayment of [the loan] by assigning to City Bank a portion of Marhaba's rights to monies reimbursed to it by the District." The 2009 Credit Agreement states the order in which Marhaba's debts are to be paid by the Receivables.

Marhaba contends that the MUD 402 Receivables are not security for the loan because they are a "direct pay" mechanism. The import of characterizing the MUD 402 Receivables as a "direct pay" mechanism is not clear. Neither party has identified dispositive law establishing the correct characterization of the MUD 402 Receivables in this context, and this court has identified no such law through its

_____

*Southern Surety* and holding, in a McGregor Act case, that "the assignee of a laborer's claim for wages is not prohibited from filing and pursuing a claim against a payment bond merely because the assignee did not personally furnish the labor or materials.").

16

own research. We do not believe that characterizing the MUD 402 Receivables as a "direct pay" mechanism is incompatible with characterizing the MUD 402 Receivables as security for the loan.

In addressing how the MUD 402 Receivables should be characterized, we look to case law considering the distinction between absolute and collateral assignments.

An "absolute" assignment occurs when the assignor "loses all control over the property assigned and can do nothing to defeat the rights of the assignee." *Coffey v. Singer Asset Fin. Co.*, 223 S.W.3d 559, 565 (Tex. App.—Dallas 2007, no pet.) (determining that a transaction was not an absolute assignment but was instead a pledge of future payments due under a structured personal injury settlement); *see also Univ. of Tex. Med. Branch at Galveston v. Allan*, 777 S.W.2d 450, 453 (Tex. App.—Houston [14th Dist.] 1989, no writ) (determining that a patient absolutely assigned her insurance benefits to a hospital).

In contrast, a "pledge" of property as collateral to secure repayment of a loan "is a transaction by which the [property] is delivered by the debtor and accepted by the creditor, but legal title does not pass to the secured party." *Coffey*, 223 S.W.3d at 566 (citing *McAllen State Bank v. Tex. Bank & Trust Co.*, 433 S.W.2d 167, 171 (Tex. 1968)).

When analyzing the MUD 402 Receivables in this light, we conclude on this record that Marhaba and City Bank intended Marhaba to assign the Receivables as collateral to secure the loan; Marhaba and City Bank did not intend that an absolute assignment would occur under which Marhaba (1) would lose all control over the MUD 402 Receivables; and (2) could do nothing to defeat City Bank's rights. *See Coffey*, 223 S.W.3d at 565; *Univ. of Tex. Med. Branch at Galveston*, 777 S.W.2d at 453. Marhaba's characterization of the assignment as a "direct pay"

17

mechanism tacitly recognizes that the assignment was not absolute in this context. Marhaba did not lose all control over the Receivables such that it could do nothing to defeat the rights of City Bank if, as Marhaba asserts, the Receivables revert back to Marhaba once the loan is fully paid.

The Assignment of Right to Reimbursement, the Assignment of Bond Proceeds, and the Credit Agreement stipulate the direct application and use of the MUD 402 Receivables to repay the loan. Therefore, the summary judgment evidence conclusively establishes that the MUD 402 Receivables secured the loan. *See Coffey*, 223 S.W.3d at 565; *Univ. of Tex. Med. Branch at Galveston*, 777 S.W.2d at 453.

### C.    Marhaba's Summary Judgment Evidence Regarding Value

Marhaba filed a financial statement purporting to show the value of the MUD 402 Receivables. It argues that the value of the MUD 402 Receivables is relevant to show that Kindron "over foreclosed" by selling an asset worth approximately $7.4 million when Marhaba owed no deficiency — or, at most, a deficiency of $1,341,386.71 — after the property foreclosure sale. Marhaba argues that "over foreclosure" is relevant to usury. *See First State Bank v. Keilman*, 851 S.W.2d 914, 932 (Tex. App.—Austin 1993, writ denied) (addressing the argument that a lender charged usurious interest when it foreclosed on collateral despite there being no debt, but rejecting the argument because it was unsupported by legally sufficient evidence).[12]

Marhaba's usury claim is based on three theories, as stated in its counterclaim and its first response to Kindron's motion for summary judgment on

---

[12] Marhaba also asserts that the value of the MUD 402 Receivables is relevant to defending Kindron's request for declaratory relief. We have addressed Marhaba's issue that summary judgment is improper on Kindron's declaratory judgment claim. The value of the MUD 402 Receivables is irrelevant to our resolution of this issue.

Marhaba's counterclaims. First, Marhaba argues that the assignment of the MUD 402 Receivables was absolute and, when combined with other interest charged on the loan, the total interest charged was usurious. We reject this theory because we hold that the assignment of the MUD 402 Receivables was not absolute; instead, as discussed above, the Receivables served as collateral for the loan. Second, Marhaba argues that Kindron charged usurious interest because (1) Marhaba's loan was extinguished by the foreclosure sale of the property; and (2) Kindron foreclosed on additional collateral when no debt remained. We reject this theory because we hold that Marhaba's loan was not extinguished by the foreclosure sale of the property, and that a debt remained after the sale. Third, Marhaba argues that Kindron demanded usurious "charges" when it demanded additional payment after the foreclosure sale of the property when no debt remained. We reject this theory because we hold that Marhaba owed a debt on the loan after the foreclosure sale of the property.

We have rejected all of Marhaba's usury theories. None of these theories depend on the value of the MUD 402 Receivables; therefore, we reject Marhaba's argument that the value of the Receivables is relevant to its claim for usury. We hold that the trial court did not err in striking evidence regarding the value of the MUD 402 Receivables. *See Pipkin*, 383 S.W.3d at 667.

### D. Summary Judgment is Proper on Usury Regardless of Waiver

Kindron moved for summary judgment on Marhaba's usury claim, arguing that its theories of usury were not supported by the evidence and that Marhaba contractually waived its claim. Marhaba argues on appeal that its contractual waiver is invalid. *See Emps. Loan Co. v. Templeton*, 109 S.W.2d 774, 780 (Tex. Civ. App.—Fort Worth 1937, no writ) ("The law will not permit persons to make contracts in advance of usurious transactions to the effect that they will not claim

19

their legal rights, under the law, to resist payment because of usury, nor enforce penalties on that account. Such agreements are void as against public policy.").

Assuming without deciding that Marhaba's contractual waiver of its usury claim is invalid, we conclude that summary judgment in Kindron's favor on Marhaba's usury claim is proper because the summary judgment evidence conclusively disproves Marhaba's theories of usury.

We conclude that summary judgment was proper in Kindron's favor on Marhaba's counterclaims. We overrule Marhaba's second issue.

## CONCLUSION

Having overruled Marhaba's two issues, we affirm the trial court's judgment.


/s/    William J. Boyce
          Justice


Panel consists of Justices Boyce, Jamison, and Donovan.