# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
January 12, 2023

Lyle W. Cayce
Clerk

No. 21-40662

THE HANOVER INSURANCE COMPANY,

*Plaintiff—Appellee*,

*versus*

BINNACLE DEVELOPMENT, L.L.C., FORMERLY KNOWN AS
BINNACLE DEVELOPMENT AND CONSTRUCTION, L.L.C.; LONE
TRAIL DEVELOPMENT, L.L.C.; SSLT, L.L.C.,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:19-CV-111

Before HIGGINBOTHAM, SOUTHWICK, and HIGGINSON, *Circuit Judges*.

LESLIE H. SOUTHWICK, *Circuit Judge*:

An insurer sued three developers for reimbursement of expenses. The developers seek to reduce their obligation through a damages clause they say is permissible for "district contracts" under the Texas Water Code. The relevant contracts, though, were not executed by a district. Summary judgment for the insurer is AFFIRMED.

No. 21-40662

FACTUAL AND PROCEDURAL BACKGROUND

This dispute involves three construction projects (the "Projects") in Galveston County, Texas. *Hanover Ins. Co. v. Binnacle Dev., LLC*, 493 F. Supp. 3d 585, 587 (S.D. Tex. 2020). The defendants, Binnacle Development, Lone Trail Development, and SSLT, are land developers. *Id.* All three are controlled by Jerry LeBlanc, Jr.

Each developer contracted with R. Hassell Properties, Inc. to complete paving and infrastructure projects in Galveston County Municipal Utility District ("MUD") No. 31.[1] *Id.* The three Hassell contracts were form MUD contracts created by MUD attorneys. Each contract stated that it was "for Galveston County Municipal Utility District No. 31."

Hassell won the contracts after a public bidding process mandated by statute. *See* TEXAS WATER CODE § 49.273(d). Hassell submitted bids to the Galveston County MUD and was ultimately awarded the contracts. Though the Galveston County MUD managed the public bidding process and

---

[1] A MUD is a form of water district authorized by the Texas Constitution. *Save Our Springs All., Inc. v. Lazy Nine Mun. Util. Dist. ex rel. Bd. of Dirs.*, 198 S.W.3d 300, 308 (Tex. App. — Texarkana 2006). They are created either "by the Texas Commission on Environmental Quality (TCEQ) or by a specific act of the Texas Legislature." *Id.* The purpose of a MUD is "to provide services such as water, sewer, and drainage to areas where those services do not exist." David Bumgardner & Keyavash Hemyari, *Dodging Mud Slingers: An Analysis and Defense of Texas Municipal Utility Districts*, 21 TEX. REV. L. & POL. 377, 388–89 (2017). "MUDs are reimbursement vehicles." *Id.* at 390. Typically, a developer pays for infrastructure up front and assumes all the risk until homes are constructed on a development. *Id.* Once the developer has completed construction, the MUD sells municipal bonds and uses the proceeds to purchase the infrastructure from the developer. *Id.* The MUD then levees a tax on the homeowners residing in the district to service the bonds. *Id.*

planned to purchase the infrastructure after completion, it was not a party to any of the Hassell contracts.

At Hassell's request, Hanover "issued payment and performance bonds as a surety in favor of the [developers] for" the Projects. *Hanover Ins. Co.*, 493 F. Supp. 3d at 587. As part of the surety arrangement, Hanover and Hassell entered into an indemnity agreement. *Id.* Under that agreement, Hanover would be assigned the contract balances for the Projects in the event that Hassell defaulted. *Id.*

Hassell ultimately failed to complete construction on the Projects and defaulted. *Id.* Hanover then took over the contracts and completed the Projects after the contract deadlines.

Hanover subsequently sued the developers in federal court to recover the contract balances on the Projects. The parties agreed that — absent any offsets, described below — Hanover was entitled to approximately $575,000 for the Projects. The developers, however, raised an affirmative defense seeking an offset based on a liquidated-damages provision in each contract charging $2,500 for each day completion was delayed. It is a fairly detailed provision, with standard language about time being of the essence, and both parties agree the measure of harm would be difficult to determine. The money language is this:

> 5. LIQUIDATED DAMAGES FOR DELAY/ECONOMIC DISINCENTIVE . . . Therefore, the Contractor and the Owner agree that for each and every calendar day the Work or any portion thereof shall remain uncompleted after the expiration of the time limit(s) set in the Contract, or as extended under [other contract provisions] . . . Contractor shall be liable to Owner for liquidated damages in the amount of $2,500 for each such calendar day, which sum the parties agree is a reasonable forecast of the damages the Owner will sustain per day that the Work remains uncompleted and in no way

constitutes a penalty. Said $2,500 per day shall also be considered an "economic disincentive for late completion of the Work" pursuant to Section 49.271(e), Texas Water Code.

Section 49.271 of the Water Code authorizes "economic disincentives for late completion of [] work" to be imposed in a "district contract." TEX. WATER CODE § 49.271(e). The liquidated-damages clause here would, if enforced, amount to an offset of $900,000. *Hanover Ins. Co.*, 493 F. Supp. 3d at 588.

Both parties moved for summary judgment. *Id.* The district court addressed two issues: "(1) Whether the Texas Water Code applies to the parties' contracts, and (2) if not, whether the liquidated-damages clauses constitute unenforceable penalties under Texas common law." *Id.* at 588–89. On the first issue, the court analyzed the Texas Water Code. *Id.* at 589–90. It concluded that because no district is a party to the contracts at issue, the economic disincentive provision from the Water Code does not apply. *Id.* at 590. On the second issue, the court found that the damages clauses in the contracts constitute an unenforceable penalty. *Id.* at 592. The court granted summary judgment for Hanover. *Id.* The developers appealed.

## DISCUSSION

Summary judgment is proper when "there is no genuine dispute as to any material fact." FED. R. CIV. P. 56(a). We review its grant *de novo*. *Nationwide Mut. Ins. Co. v. Baptist*, 762 F.3d 447, 449 (5th Cir. 2014).

"In Texas, the construction of a contract presents a question of law." *Balfour Beatty Constr., L.L.C. v. Liberty Mut. Fire Ins. Co.*, 968 F.3d 504, 509 (5th Cir. 2020). This court "review[s] *de novo* questions involving the construction or interpretation of contracts." *L & A Contracting Co. v. Southern Concrete Servs., Inc.*, 17 F.3d 106, 109 (5th Cir. 1994). Similarly,

"[t]he construction of a statute is a question of law which the Court reviews *de novo*." *Grigg v. C.I.R.*, 979 F.2d 383, 384 (5th Cir. 1992).

The developers make two arguments here. The first is that the Hassell contracts are district contracts, with their liquidated-damages provisions validated by the Water Code's authorization of economic disincentives in contracts. The second is that even if the provisions are not protected by the Water Code, the liquidated-damages provisions are enforceable because they are not a penalty.

## I.    *District contracts*

We first consider whether Chapter 49 of the Water Code applies to the Hassell contracts. Even if it does, the second issue is whether the Water Code authorizes the terms of the liquidated-damages provision. We conclude the Water Code does not apply and end our analysis there.

Chapter 49 of the Water Code is titled "Provisions Applicable to All Districts" and applies to "all general and special law districts." TEX. WATER CODE § 49.002(a). The relevant statute here, Section 49.271, provides:

> (a) Any contract made by the board for construction work shall conform to the provisions of this chapter.
>
> . . .
>
> (e) A district contract for construction work may include economic incentives for early completion of the work or economic disincentives for late completion of the work.

The "board" refers to the "governing body of a district." § 49.001(a)(3). It appears that no Texas appellate court has construed Section 49.271.

Hanover sees this as a straightforward case. Section 49.271 begins by noting its limited applicability: "Any contract *made by the board* for construction work shall conform to the provisions of this chapter." (emphasis added). The plain language of Section 49.271, Hanover argues,

forecloses its application to contracts between two private parties. Hanover contends that legislative history reiterates this conclusion. That history demonstrates that Section 49.271 "authorize[s] *districts* to include economic incentives for early completion of construction contracts." H. Research Org. Bill Analysis, Tex. H.B. 1541, 78th Reg. Sess., at 4 (2003) (emphasis added).

"[I]f a statute is unambiguous," courts must "adopt the interpretation supported by its plain language unless such an interpretation would lead to absurd results." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). The text of Section 49.271 certainly supports that the "economic disincentives" language is relevant only to a contract "made by the board" of a district. TEX. WATER CODE § 49.271(a), (e). The developers seek to overcome that seemingly natural reading with several arguments. We address each of them.

First, the developers argue that because Section 49.271 is not, like some other sections, limited "only to a district," it does not require a district to be a contracting party. We disagree with the premise, as Section 49.271(a) limits its applicability to contracts "made by the board," and boards govern districts. Still, we examine the developers' examples. We find the cited sections to limit their applicability to specific *types* of districts. One example is a section which "applies only to a district that is located wholly within the boundaries of a municipality with a population of more than 1.5 million." Section 49.052(h). Other sections contain similar qualifications, often according to a district's location or population.

Though some sections in Chapter 49 are limited only to certain types of districts, that does not support that Section 49.271, which lacks identical language, should apply regardless of whether a district is involved. In fact, we find the opposite conclusion more reasonable. Chapter 49 is titled "Provisions Applicable to All Districts." The structure of Chapter 49

suggests that the chapter, as a whole, applies only to districts unless a section narrows its application to certain types of districts.

Next, the developers argue that Section 49.278 of Chapter 49, which is entitled "Nonapplicability," does not limit Section 49.271's application only to districts. Such limiting language is not there, but it is elsewhere in the chapter. Because Section 49.271 already limits its application to contracts "made by the board" of a district, further exclusion would be redundant.

Third, the developers argue that Chapter 2253 of the Texas Government Code provides that district contracts need not include a district as a contracting party. Chapter 2253 governs performance and payment bonds on public works projects. *See* TEXAS GOV'T CODE § 2253.001. It is incorporated into the Water Code through Section 49.275, which states that "[a]ny person, firm, partnership, or corporation to whom a contract is let must give good and sufficient performance and payment bonds in accordance with Chapter 2253, Government Code." Here, the surety bonds stated they complied with Chapter 2253 of the Texas Government Code.[2]

The developers argue Chapter 2253 contemplates that a "public works contract" can include a contract between a prime contractor and a subcontractor, which are two private parties. Thus, the developers reason, Chapter 49's incorporation of Chapter 2253 indicates the former also applies to a contract between two private parties.

Whether Chapter 2253 even applies is unclear due to the absence of any public entity in the Hassell contracts. The section of Chapter 2253 that prescribes bonding requirements applies only when a "*governmental entity* [] makes a public work contract with a prime contractor." TEXAS GOV'T CODE

---

[2] Hanover contends that Chapter 2253 was erroneously mentioned on the bonds because form bonds were used. We have no need to decide if that is so.

§ 2253.021(a) (emphasis added).  Furthermore, even were Chapter 2253 to apply, we do not find it inconsistent to conclude that Section 49.271 applies only to contracts "made by the board" of a district.  *See* TEX. WATER CODE § 49.271(a).  We conclude that Chapter 2253's incorporation into the Water Code does not convert the contracts here into "district contracts."

Fourth, the developers argue that the definition of "district facility" under the Water Code favors a broad reading of "district contract." "District facility" is defined, in part, as "any plant [or] equipment . . . supplied for . . . the business or operations of a district." TEX. WATER CODE § 49.001(a)(10).  The developers assert that this definition means that any contract that results in construction "for . . . the operations of a district" can be a district contract, regardless of whether a district is a signatory party.

The developers are correct that the Hassell contracts were "for Galveston County Municipal Utility District No. 31."   Further, the Galveston County MUD planned to purchase the infrastructure upon completion.  There is, though, no need to explore other sections of the Water Code when the relevant section here prescribes its own scope.  As we stated earlier, Section 49.271(a) states that it applies to contracts "made by the board" of a district.  The "district facility" definition does not alter that requirement.[3]

Finally, the developers argue, in the alternative, that even if the Hassell contracts are not district contracts, they incorporate the economic disincentive provision of Section 49.271.  The developers assert that there is nothing in Chapter 49 of the Water Code that prohibits contractors engaged

---

[3] We are mindful that the contracts here were "for" the Galveston County MUD. At other times, though, there is direct contracting between a MUD and developer.  *See, e.g., N.P., Inc. v. Turboff*, 111 S.W.3d 40, 41 (Tex. 2003); *Marhaba Partners Ltd. P'ship v. Kindron Holdings*, LLC, 457 S.W.3d 208, 210–11 (Tex. App. — Houston [14th Dist.] 2015).

in public works to adopt Section 49.271's right to include an economic disincentive clause. The defendants analogize to the Federal Arbitration Act ("FAA"), 9 U.S.C. ch. 1, which allows contracting parties to incorporate the right to arbitration.

The comparison to the FAA is imaginative but inapt. The text of Section 49.271 limits it to "district contracts." There is no text to support that private parties may rely on, or indeed are protected by, Section 49.271 where there is no contract executed by the district board. The better analogy is based on the fact that the FAA applies to contracts involving foreign and interstate commerce. *See* 9 U.S.C. § 1–2; *Hanover Ins. Co.*, 493 F. Supp. 3d at 590. Similarly, as we just noted, Section 49.271 states that it applies to "district contract[s]." TEX. WATER CODE § 49.271(e). The developers are trying to make the Water Code apply to contracts between private parties that one day may be assumed by a district. That expansion of the statute ignores its clear wording.

We hold that Section 49.271 allows "economic disincentive" clauses only in contracts where a district is a contracting party. Because no district is party to the Hassell contracts, they cannot incorporate "economic disincentive" clauses permitted under the Texas Water Code.

## II.    *Liquidated damages analysis*

Even though the Water Code is inapplicable, that does not automatically invalidate the damages clause here. In Texas, liquidated damages cannot "function[] as a penalty" and "must not be punitive, neither in design nor operation." *Atrium Med. Ctr., LP v. Houston Red C LLC*, 595 S.W.3d 188, 192 (Tex. 2020). The developers understandably do not try to make that standard apply. Instead, they seek to avoid it altogether by contending the damages clause is not a liquidated-damages provision but one that limits liability. The damages clause, they say, is meant to "reduce

or offset any amount owed, as opposed to being used as an affirmative claim to recover liquidated damages." Therefore, the argument goes, the damages clause is not subject to Texas's liquidated-damages jurisprudence.

To decide what this provision is, we are guided by the need to "look to the substance of the contract's terms to determine if [a] provision constitutes 'liquidated damages.'" *Sunbelt Servs., Inc. v. Grove Temp. Serv., Inc.*, No. 05-05-01090-CV, 2006 WL 2130144, at *3 (Tex. App. — Dallas Aug. 1, 2006).

The damages clause is entitled "LIQUIDATED DAMAGES FOR DELAY/ECONOMIC DISINCENTIVE" and expressly provides for "liquidated damages in the amount of $2,500 for each [] calendar day" of delay. This provision does not, in substance, set a mere limitation of liability or delimit damages to "an agreed maximum." 24 WILLISTON ON CONTRACTS § 65:6 (4th ed.). Rather, the clause provides that Hassell is liable for the liquidated damages of $2,500 for every day the Projects are late. Looks like a liquidated-damages provision to us.

Moreover, the damages clause bears little resemblance to recognized limitation of liability clauses. In one of our decisions, for example, we found a limitation of liability clause where the contract stated that "[i]n no event shall the liability of either party . . . exceed $500,000." *Global Octanes Texas, L.P. v. BP Expl. & Oil Inc.*, 154 F.3d 518, 521 (5th Cir. 1998). In another opinion, a Texas Court of Appeals concluded that a provision stating "liability is and shall be limited to the sum of . . . $350.00" was a limitation of liability clause. *Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc.*, 997 S.W.2d 803, 809–10 (Tex. App. — Dallas 1999, no pet.). The damages clause here, by contrast, does not set a ceiling on liability but prescribes a per diem damages amount. That is a liquidated-damages clause.

No. 21-40662

Because the developers do not contend that the damages clause survives a liquidated-damages analysis, we need not consider that possibility. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994). We do not disturb the district court's finding that the clause is an unenforceable penalty under Texas law.

AFFIRMED.